**HOLLY SUGAR CORPORATION, Howard Edwards and Robert Strecker, Plaintiffs-Appellees, Cross-Appellants,**

v.

**GOSHEN COUNTY COOPERATIVE BEET GROWERS ASSOCIATION, Defendant-Appellant, Cross-Appellee.**

**Nos. 83–1617, 83–1751.**

United States Court of Appeals, Tenth Circuit.

Jan. 16, 1984.

Rehearing Denied Feb. 24, 1984.

Donald E. Jones of Jones & Graham, Torrington, Wyo., for defendant-appellant, cross-appellee.

Bob C. Sigler, Torrington, Wyo. (Robert F. Hanley and Melanie R. Vogl of Morrison & Foerster, Denver, Colo., with him on briefs), for plaintiffs-appellees, cross-appellants.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

We are asked to decide whether the trial court properly enjoined the efforts of a sugar beet grower's association to keep its members from individually contracting with a purchaser of sugar beets by threatening to take legal action to enforce the terms of a marketing agreement between the association and the individual growers.

The association represents approximately 230 sugar beet growers near Goshen County, Wyoming. For many years the association has negotiated contracts with the local purchaser of the beets, a sugar manufacturer. As usual, the association and the manufacturer entered into negotiations for the 1983 beet crop. The manufacturer made several offers to the association. The last offer was rejected on May 4, 1983, when the members of the association voted 132 to 70 against accepting the offer. At the same time, the members of the association voted 177 to 55 not to release any grower from the association agreement which precludes members from contracting individually with the manufacturer.

Subsequently, the manufacturer encouraged the growers to join other associations which had already negotiated a contract. At the same time, the association warned its members not to breach their obligations under the association agreement.[1]

---

1. In a newspaper article, and apparently over the radio, the association informed its members that "[i]t is the intention of the Board of Directors to bring injunctive action to prevent members of the association from contracting with [the manufacturer] outside of the association." Record, vol. 1, at 17.

On May 11, the manufacturer and two growers[2] filed suit against the association seeking a temporary restraining order, a preliminary injunction and a permanent injunction prohibiting the association from threatening to take or taking legal action against members who contract with the manufacturer. Plaintiffs alleged antitrust violations and intentional interference with business advantage. The temporary restraining order was granted on May 11, and a hearing was set for May 13, on the motion for a preliminary injunction.

Near the end of the two-day preliminary injunction hearing the trial judge, on his own motion, consolidated the preliminary injunction hearing with the trial on the merits. At the conclusion of the trial, the court issued a permanent injunction with findings. The court found, inter alia,

■ The defendant (Association) has threatened individual beet growers, members of the Association, with legal action should they contract individually with plaintiff [manufacturer]. . . .

■ The Court recognizes that the Association was and is formed for the benefit of beet growers and has been given authority to act, in one capacity as negotiator for the beet growers in negotiations with [the manufacturer]. However, [the manufacturer] and the Association have reached an impasse in the 1983 contract negotiations and all attempts at settlement or agreement have been unsuccessful. The negotiations have continued into the time when growers need to be and should be planting beets. . . .

■ The contract which is being offered by [the manufacturer] is identical to the [manufacturer's] contract approved by beet growers in Platte County, Wyoming, the Big Horn Basin in Wyoming and two beet growing areas in Montana. Furthermore, the [manufacturer's] contract is better for the beet growers than that contract offered by a competing sugar factory in the area. Many of the beet growers in Goshen County desire to contract to grow beets for [the manufacturer]. Some of these growers want to contract with [the manufacturer] regardless of the position taken by the Association. Others feel bound to abide by any decision the Association makes, and would go so far as to sacrifice their opportunity to grow beets in 1983.

■ The Court concludes that plaintiff will suffer irreparable damage, possibly factory closure unless and until the beet growers are permitted to proceed with the raising of beets. The economy of Goshen County is almost entirely dependent on the sugar beet industry. As a result, irreparable damages will also be suffered by the whole of Goshen County should the beet growers be unable to grow beets and should the [manufacturer's] factory close.

■ The Court further concludes that the beet growers should not be denied their right to carry on farming activities solely by reason of the Association's refusal to approve the [manufacturer's] contract.

Record, vol. 1, at 42–44.

Accordingly, the court entered an order enjoining the association from interfering with or threatening to bring legal action against any grower who wants to contract with the manufacturer. Furthermore, the judge ordered that each beet grower was free to contract with the manufacturer. Finally, he denied plaintiffs' request for damages and attorneys' fees. *Id.* at 44.

The association appeals from the issuance of the permanent injunction and the manufacturer cross-appeals the denial of damages and attorneys' fees.

■ The association argues that the trial court erred in several respects. First, the association claims that the plaintiffs lack standing to challenge the agreement between the association and its members. "The essence of the standing question, in its constitutional dimension, is 'whether the

---

**2.** There are approximately 230 growers in the association. Out of that number only two chose to join the manufacturer in this action.

plaintiff has alleged such a personal stake in the outcome of the controversy to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 260-61, 97 S.Ct. 555, 560-61, 50 L.Ed.2d 450 (1977). When deciding the issue of standing, a court must accept as true all of the material allegations of the complaint and must view the complaint in the manner most favorable to the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Plaintiffs alleged antitrust violations, specifically restraint of trade, and intentional interference with business advantage. Both the manufacturer and the individual farmers have such a personal stake in the outcome of litigation involving those allegations to justify the invocation of the judicial process. Plaintiffs have standing to bring this lawsuit.[3]

■ The association further argues that the trial court committed prejudicial error by consolidating the preliminary injunction hearing with the trial on the merits. The Federal Rules of Civil Procedure, Rule 65(a)(2), authorize such a consolidation. However, the parties must be given adequate notice of the consolidation so that they may be given a full opportunity to present their evidence. *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1187 (10th Cir. 1975). The trial judge informed the parties of his intention to consolidate the hearings on the second of two days of testimony, just before the association called its last witness. At that time the association objected to the consolidation. Record, vol. 4, at 323. While the short notice may have been error, we cannot say that it was prejudicial error. After the notice was given, the association had the opportunity to call additional witnesses and ask for a continuance in order to present all of its evidence. The association, however, chose to rest its case. Furthermore, at oral argument, the association admitted that it would not have significantly changed the presentation of its evidence even if it had received more timely notice of the consolidation. Thus, the consolidation was not prejudicial.

The association also argues that the injunction was erroneously granted because the trial court made no finding of illegal conduct; or assuming arguendo illegal conduct, there was no showing that damages would be inadequate or that the injury would be irreparable; and that the court's *findings were insufficient to meet the requirements of Rules 52 and 65 of the Federal Rules of Civil Procedure.*

■ A court cannot grant a remedy, legal or equitable, unless there has been a legal injury; mere damage is insufficient. "An injury, legally speaking, consists of a wrong done to a person, or, in other words, a violation of his right. It is an ancient maxim, that a damage to one, without an injury in this sense, (*damnum absque injuria*), does not lay the foundation of an action; because, if the act complained of does not violate any of his legal rights, it is obvious, that he has no cause to complain.... Want of right and want of remedy are justly said to be reciprocal. Where therefore there has been a violation of a right, the person injured is entitled to an action." The converse is equally true, that where, although there is damage, there is no violation of a right no action can be maintained.

*Alabama Power Co. v. Ickes,* 302 U.S. 464, 479, 58 S.Ct. 300, 303, 82 L.Ed. 374 (1938) (citation omitted). While we do not dispute the trial court's conclusion that the actions taken by the association will cause "damage" to the manufacturer and perhaps the community as a whole, the trial court did not find any illegal conduct on the part of the association.

The trial court's findings are devoid of any findings or conclusions indicating that the association violated any law or any right of the plaintiffs. Conversely, the

---

**3.** The validity of the marketing and association agreements are relevant to both the antitrust allegation and the claim of intentional interference with business advantage.

court held that the association has the authority to act as negotiator for the growers. Similarly, the court summarily denied plaintiffs' claims for attorneys' fees and damages which arguably should have been granted had there been a finding of illegal activity by the association.[4]

Furthermore, as a matter of law, neither the complaint nor the record establish any violation by the association of the antitrust laws of the United States. Section 6 of the Clayton Act, 15 U.S.C. § 17 (1976), and section 1 of the Capper-Volstead Act, 7 U.S.C. § 291 (1976), establish a qualified exception for agricultural marketing associations from the antitrust laws. In particular, section 1 of the Capper-Volstead Act provides in part:

> Persons engaged in the production of agricultural products as farmers, planters, ranchmen, dairymen, nut or fruit growers may act together in associations, corporate or otherwise, with or without capital stock, in collectively processing, preparing for market, handling, and marketing in interstate and foreign commerce, such products of persons so engaged. Such associations may have marketing agencies in common; and such associations and their members may make the necessary contracts and agreements to effect such purposes . . . .

7 U.S.C. § 291 (1976).

 That exception is not absolute. For example, an agricultural marketing association cannot enter into agreements with persons not engaged in agricultural production, particularly for the purpose of acquiring monopoly power, *see United States v. Borden Co.,* 308 U.S. 188, 204–05, 60 S.Ct. 182, 190–91, 84 L.Ed. 181 (1939). Similarly, the association may not engage in predatory tactics such as picketing and harassment, coerced membership and discriminatory pricing. *Fairdale Farms, Inc. v. Yankee Milk, Inc.,* 635 F.2d 1037, 1044 (2d Cir.1980), *cert. denied,* 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (and cases cited therein). Plaintiffs, however, have not alleged such conduct nor was any evidence presented at trial which pointed to such conduct.[5] Thus, we conclude that no cause of action based on an antitrust violation by the association was established.

 The court's order is also devoid of any indication that the association intentionally interfered with plaintiffs' business advantage. Furthermore, to establish such a claim plaintiffs would have to establish that the marketing agreements are invalid. The plaintiffs argued that the agreements were invalid because some of them were unsigned by the association and some had been in effect for over ten years, allegedly in contravention of Wyoming law. The court did not rule on those contentions but instead, without explaining its reasoning, ruled that all members of the association were free to individually contract with the association.[6]

Inasmuch as there was no finding of legal injury there was no basis for a legal or equitable remedy. *Alabama ·Power,* 302 U.S. at 479, 58 S.Ct. at 303.

 Not only was there no finding of legal injury but there was no finding that justified equity jurisdiction. While the court made bald conclusions that the plaintiffs would suffer irreparable harm, the record does not establish irreparable harm. Nor did the trial court lay out its reasoning for such a conclusion. Calculating the value of a lost crop is common practice. Thus,

---

4. If the court had found an antitrust violation, the plaintiffs could possibly be entitled to both an injunction to prevent future injury and treble damages against the association and its members to compensate prior injury.

5. *Treasure Valley Potato Bargaining Association v. Ore-Ida Foods, Inc.,* 497 F.2d 203 (9th Cir.), *cert. denied,* 419 U.S. 999, 95 S.Ct. 314, 42 L.Ed.2d 273 (1974), is in many respects similar to the case at bar.

6. Even if the court had found that the agreements entered into by the individual plaintiffs were invalid, its order was over broad. Each agreement would have to be examined individually because some had been in effect less than ten years and had been signed by both of the parties.

the individual plaintiffs could be compensated in damages. Similarly, the record does not disclose why the manufacturer could not be compensated in damages if it were forced to close its factory. If damages can compensate a plaintiff an injunction will not lie. *Ogden River Water Users Association v. Weber Basin Water Conservancy, E.O.*, 238 F.2d 936, 942 (10th Cir.1956).

■ The trial court also arrived at the bald conclusion that the community would suffer irreparable damage as a result of the association's actions. Even if true, the issue was not before the court for the purpose of determining whether plaintiffs had shown irreparable injury. A plaintiff's claim for relief absent a statutory provision or judicially created exception cannot be based on allegations of injury to third parties. *Warth v. Seldin*, 422 U.S. 490, 500–01, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975). Thus the finding of irreparable injury to the community has no bearing on whether the plaintiffs are entitled to equitable relief.[7]

Therefore, inasmuch as there was no showing of irreparable injury to establish equity jurisdiction, and furthermore, because there was no finding of any legal injury to plaintiffs or illegal conduct on the part of the association, no injunction should have issued.

■ Finally, in both opening and closing arguments plaintiffs advanced their contention that the marketing agreements were invalid because many of them were unsigned by the association and many of them had been in effect for over ten years in contravention of Wyoming law. Record, vol. 3, at 6 and vol. 4, at 336–37, 341–43. Despite plaintiffs' forceful arguments concerning these issues, the trial court did not expressly mention or rule on them in its order. We therefore conclude that the trial court rejected plaintiffs' arguments on that point.

Because there is no antitrust violation as a matter of law and the trial court found the marketing agreements to be valid, the decision of the trial court is reversed and the case is remanded with instructions to dismiss this action.

BARRETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion holdings that (a) plaintiffs-appellees (Holly Sugar Corp.) have standing to challenge the agreement between the association and its members, (b) the trial court did not commit prejudicial error by consolidating the preliminary injunction hearing with the trial on the merits, and (c) the trial court's findings are not adequate for purposes of review on significant, dispositive issues. For example, the majority infers (and perhaps properly so) that the district court implicitly found the marketing agreements between the Association and its alleged members to be valid. That, however, was a hotly-contested issue and one pivotal in the case. It requires a definitive, specific finding.

I wish to make it clear that I make no determination involving the merits of the 1983 sugar beet contract dispute between Holly Sugar and the Goshen County Beet Growers Association. It is obvious from the record that "bad blood" has existed because the beet-growing members of the Association were required, under the 1982 contracts, to absorb considerable losses resulting from the sale of beets from an early 1982 frost. The growers and the Association do not believe that Holly Sugar dealt fairly in requiring the beet growers to shoulder the losses. This tension existed when the 1983 contract negotiations commenced. The Association, in an obvious effort to recoup for its members' losses in 1982, argued that the 1983 proposed contract by Holly Sugar was designed to "shift" a large number of the sugar beet dollars rightfully due to the growers into Holly Sugar's coffers, amounting to about

---

7. Once a plaintiff has established that an injunction would be a proper remedy, the court may then consider the effect such an injunction would have on the community in deciding whether to issue the injunction.

one million dollars. Holly Sugar counters with the contention that identical contracts have been executed by the neighboring Platte County Beet Growers Association and other associations for sales of sugar beets to Holly Sugar plants at Worland, Wyoming, and Sidney, Montana.

The district court made several significant findings which are not controverted. The court found that at the date of the hearing, the hour was late for the growers to plant beets and that "[H]olly Sugar and the Association have reached an *impasse* in the 1983 contract negotiations and all attempts at settlement or agreement have been unsuccessful." [R., Vol. I, p. 42] (emphasis added). Further, the trial court found, *inter alia:* "The contract which is being offered by Holly Sugar is identical to the Holly contract approved by beet growers in Platte County, Wyoming, the Big Horn Basin in Wyoming and two beet growing areas in Montana. Furthermore, the Holly contract is better for the beet growers than that contract offered by a competing factory in the area." [R., Vol. I, p. 43].

I must dissent from the majority's opinion reversing the decision of the trial court and remanding with instructions to dismiss the action. I would remand for further proceedings to determine the validity of the marketing agreements between the Association and its members and the right of the Association members to withdraw from the marketing contract, without penalties, and become, as some beet grower members have become, non-voting members of the Platte County Beet Growers Association. In addition, I cannot agree with the majority's conclusion that there is no antitrust violation as a matter of law. The law is simply not that open and shut.

The Association contended, and the majority opinion agreed, that Holly Sugar has not alleged conduct or presented evidence at trial which establishes an antitrust violation chargeable to the Association. The record is not sufficiently complete to justify that legal conclusion. I agree that section 6 of the Clayton Act and section 1 of the Capper-Volstead Act exempt agricultural cooperatives from the scope of the antitrust laws *except* upon proof that the cooperative attempts to monopolize or engages in "predatory practices." If in fact the Association "members" who entered into contracts with Holly Sugar individually or as non-voting members of the adjoining Platte County Beet Growers Association *after* the last vote of the Association was taken on May 4, 1983, were not bound by the agreement with the Association because the contracts were not duly executed or otherwise binding on them for passage of time, the Association's attempt to compel *all* members to accede to the Association's 1983 no-contract position with Holly Sugar might constitute an illegal monopoly in restraint of trade. If so, the Association was without power under § 1 of the Capper-Volstead Act, 7 U.S.C. § 291, to fix the price at which its members' beets are sold. The Association's actions and practices must not only be legally authorized, but they must also have a legitimate business justification.

Cooperative associations, like the Goshen County Beet Growers Association, have many of the rights and powers of labor unions. *See* 18 Am.Jur.2d, *Cooperative Associations* § 21. A basic element of impasse is that it is reached only when a breakdown in bargaining occurs after good-faith negotiations. *NLRB v. Crompton-Highland Mills, Inc.,* 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320 (1949). Upon impasse, the duty to bargain is suspended. The issue of whether the Association, through its officers and negotiators, fairly represented the interest of the beet grower members involves the same duty as that imposed on labor unions to bargain in good faith on behalf of their members. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Just as an employer in a multi-employer bargaining unit may be justified in withdrawing from the bargaining unit when it is substantially fragmented and the employer is subject to extreme financial pressure, *Bonanno Linen Service v. NLRB,* 454 U.S. 404, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982), so, too, may the individual beet

grower members of the Association have been likewise justified in contracting individually with Holly Sugar following the impasse in negotiations. While impasse, per se, is not a legitimate basis for withdrawal from a bargaining unit, *Harding Glass Industries, Inc. v. NLRB*, 672 F.2d 1330 (10th Cir.1982), the likelihood of extreme financial hardship threatening a member's existence creates the "unusual circumstances" justifying withdrawal upon impasse.

The right of an individual beet grower member of the Association to freely enter into a contract with Holly Sugar for the sale of his 1983 sugar beets may be justified because the absolute impasse and the refusal of the Association to release him are detrimental to his economic survival. Counsel for the Association acknowledged at the trial court hearing that "at this late date it's questionable whether we (the Association's members) could raise profitable beets." [R., Vol. III, p. 17]. The date, to be sure, was late. To many members, the issue may then have been one of economic survival. To the same extent, Holly Sugar was facing the closure of its Torrington plant. This Court adopted the "unusual circumstances" exception laid down in *Bonanno Linen, supra,* in *NLRB v. Custom Sheet Metal & Service Co.,* 666 F.2d 454 (10th Cir.1981). We there held that an employer could lawfully withdraw from a multiemployer bargaining unit shortly before a contract was reached in view of evidence that to remain in the bargaining group, following the union's refusal to modify the unit contract, would subject the company to extreme financial hardship which threatened its existence as a viable business entity.

The member beet growers were faced with the Association's threat of suit and the possibility of substantial penalties if they independently signed a 1983 contract with Holly Sugar or if they joined the Platte County Growers Association. Failure by some of the members to contract and grow beets may have resulted in the loss of any marketable crop—a personal economic disaster for many member growers. The same

economic disaster faced the Holly Sugar plant at Torrington. To effectively operate the plant, Holly Sugar needed a 1983 commitment of some 17,500 to 18,000 acres.

The case should be remanded for further proceedings.