**KANSAS HOSPITAL ASSOCIATION, Bethany Medical Center, Asbury–Salina Regional Medical Center, and Stormont–Vail Regional Medical Center,**

**and**

**Inez Williams, Vanessa Brewer, and Gary Byers, individually and on behalf of all similarly situated persons, Plaintiffs,**

**v.**

**Donna L. WHITEMAN, in her official capacity as Secretary of the Kansas Department of Social and Rehabilitation Services, Defendant.**

Civ. A. No. 93–4217–DES.

United States District Court,
D. Kansas.

Oct. 4, 1993.

---

Charles R. Hay, Wayne T. Stratton, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Kansas Hosp. Ass'n, Bethany Medical Center, Asbury–Salina Regional Medical Center Inc. and Stormont–Vail Regional Medical Center.

Carol L. Boorady, Legal Services of Wichita, Wichita, KS, Jane K. Swanson, Kansas Legal Services, Inc., Kansas City, KS, for Inez Williams, Vanessa L. Brewer and Gary Byers.

Reid Stacey, Social & Rehabilitation Services, Bruce A. Roby, Kansas Dept. of SRS, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of the plaintiffs for a temporary restraining order and a preliminary injunction (Doc. 2). This action was filed just before noon on September 29, 1993. The plaintiffs were directed to notify the defendant of the pending action, and the court heard arguments from all parties at a hearing held at 2 p.m. on September 30, 1993. Following the hearing, the court granted from the bench a temporary restraining order in favor of the plaintiffs to preserve the status quo pending the court's issuance of a written decision on the plaintiffs' motion. The court has reviewed the pleadings and has considered the parties' respective arguments, and is now prepared to rule on the motion for a temporary restraining order.[1]

■■■ This case is brought by two groups of plaintiffs. The first group ("hospital plaintiffs") includes the Kansas Hospital Association, a non-profit corporation representing the views of 126 of the 131 community hospitals in Kansas; Bethany Medical Center, located in Kansas City, Kansas; Asbury–Salina Regional Medical Center, located in Salina, Kansas; and Stormont–Vail Regional Medical Center, located in Topeka, Kansas. The three plaintiff hospitals are all licensed general hospitals. As participating providers in the Kansas Medicaid Plan,[2] each of the three hospitals regularly admits Medicaid beneficiaries as patients.

The second group of plaintiffs ("individual plaintiffs") includes Inez Williams and Vanes-

---

1. Because the defendant has not had sufficient time to prepare a written response to the plaintiffs' motion for preliminary injunctive relief, the court will set this matter for a subsequent hearing, at which time the parties may present testimony or other evidence in support of their respective positions on the motion for a preliminary injunction.

2. Medicaid is a program of medical assistance funded in part by the federal government and in part by the state for aged, blind, or disabled individuals, and for families with dependent children, whose income and resources are insufficient to meet the costs of necessary medical services. Medicaid is authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq. While state participation is voluntary, any state electing to participate must comply with statutory requirements pertaining to the program. See Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990).

sa Brewer, both residents of Kansas who are eligible for and receive Medicaid benefits, and Gary Byers, a Kansas resident who is eligible for and receives benefits under the Kansas MediKan program.[3] All have chronic health problems that are reasonably likely to require hospital treatment within the next year. None of the three individuals have any other medical insurance coverage. The individual plaintiffs seek to represent a class, not as yet certified, comprising all present and future recipients of medical assistance benefits provided by the state Department of Social and Rehabilitation Services who are, or will be, affected by the challenged action of the defendant.

Plaintiffs collectively seek to bar implementation of an impending amendment to K.A.R. 30–5–71(a)(1), a regulation promulgated by the defendant Secretary of the Department of Social and Rehabilitation Services as part of her statutory responsibility for administering medical assistance programs in Kansas. The federal Medicaid statute permits, but does not require, states to charge certain recipients copayments for specific services. *See* 42 U.S.C. § 1396a(a)(3), (b)(3), *see also Sweeney v. Bane,* 996 F.2d 1384, 1385 (2d Cir.1993). The proposed amendment, scheduled to take effect October 1, 1993,[4] would increase the copay amount required to be paid by medical assistance beneficiaries for inpatient hospital services from the present level of $25 for each hospital admission to $325 per admission. The plaintiffs seek injunctive and declaratory relief barring the defendant from implementing the proposed increase, claiming that the amendment would violate certain rights afforded to some or all of them by federal statutes and regulations. Consequently, they seek equitable remedies for the alleged violations pursuant to 42 U.S.C. § 1383, including a temporary restraining order to bar the proposed amendment from taking effect.

The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court. *Sweeney v. Bane,* 996 F.2d at 1388; *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 354 (10th Cir. 1986); *Jimenez v. Barber,* 252 F.2d 550, 554 (9th Cir.1958). When the opposing party has been notified and a hearing held prior to the issuance of a temporary restraining order, the specific requirements of Fed.R.Civ.P. 65(b), including the ten-day limitation on the duration of such an order, do not apply. *See* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951, at 500 (1973). In such a case the court, in addressing a motion seeking a temporary restraining order, follows the same procedure as for a preliminary injunction motion. *Id.* at 499.

To obtain a temporary restraining order or a preliminary injunction in federal court, the movant has the burden of establishing that:

> (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992) (quoting *Tri–State Generation,* 805 F.2d at 355); *see also Federal Deposit Ins. Corp. v. Cafritz,* 762 F.Supp. 1503, 1505 (D.D.C.1991); *Franklin Savings Ass'n v. Office of Thrift Supervision,* 732 F.Supp. 1123, 1124 (D.Kan.1990) (citing *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th

---

**3.** MediKan is the state-funded medical assistance program for beneficiaries of the state welfare program known as General Assistance. At oral argument, counsel for the individual plaintiffs conceded that the federal requirements and restrictions applicable to the Medicaid program do not apply to plaintiff Byers, since MediKan is a state-funded program. Nevertheless, counsel stated that the challenged action taken by the

defendant applies to MediKan beneficiaries as well as to Medicaid beneficiaries.

**4.** Although the defendant originally proposed the amendment to take effect September 1, 1993, she was apparently unable to obtain the necessary approval of the State Rules and Regulations Board in order to implement the change as a temporary regulation prior to October 1, 1993.

Cir.1980)); *Metro Mobile Cts, Inc. v. Centel Corp.*, 694 F.Supp. 806, 807 (D.Kan.1988). If the moving party satisfies the first three elements, the standard for meeting the fourth requirement, likelihood of success on the merits, generally becomes more lenient. In such a case, the movant need only show that the issues are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *See Tri–State Generation*, 805 F.2d at 358; *see also Otero Savings & Loan Ass'n v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir.1981); *Franklin Savings Ass'n*, 732 F.Supp. at 1124–25.

■ 1. *Irreparable Injury.* The hospital plaintiffs contend that they will be irreparably harmed if the proposed copay increase takes effect, because many, if not most, Medicaid beneficiaries are financially unable to pay $325 per hospital admission. Consequently, the plaintiffs contend that the participating hospitals as a practical matter will have to assume the copay amount if it is uncollectible. They further argue that if the increase in the copay takes effect but is later overturned, the Eleventh Amendment bars a suit against the state for monetary relief. They therefore contend that the financial harm they anticipate if the amendment takes effect will be irreparable.

The court considers it significant that a hospital may not deny services to an eligible beneficiary due to the inability of the beneficiary to pay the required copay amount. *See* 42 U.S.C. § 1396o(e); 42 C.F.R. § 447.15. However, the inability to pay does not extinguish the individual's liability to the hospital for the copay amount. *Id.* While the court must therefore conclude that none of the individual plaintiffs will be denied access to inpatient hospital care because of the proposed significant increase in the copay requirement, the providers are quite likely to suffer a loss in revenue for providing hospital care to Medicaid beneficiaries.

Under normal circumstances, monetary loss may be remedied by an award of compensatory damages, and the risk of such loss is therefore not considered irreparable. *See Holly Sugar Corp. v. Goshen County Coop. Beet Growers Ass'n*, 725 F.2d 564, 570 (10th Cir.1984). However, where, as here, the defendant is a state agency, the Eleventh Amendment would bar the plaintiff hospitals from suing the state for damages if it turns out that the proposed copay requirement is excessive. *See Kansas Health Care Ass'n v. Kansas Dep't of Social and Rehabilitation Services*, 822 F.Supp. 687, 698 (D.Kan.1993) (citing *Temple University v. White*, 941 F.2d 201, 215 (3d Cir.1991), *cert. denied sub nom. Snider v. Temple University*, —— U.S. ——, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992)). *But see Sweeney v. Bane*, 996 F.2d at 1387 (affirming district court's order denying preliminary injunction in part because burden of erroneous copayment is financial and therefore compensable by refund). The court therefore concludes that the plaintiff hospitals will suffer irreparable harm if this injunction does not issue.

Although less persuasive, the individual plaintiffs also contend that they will be deterred from seeking necessary hospital care by the imposition of a copay requirement that they cannot afford to pay given their limited financial resources. While the court does not consider this argument sufficient by itself to warrant injunctive relief absent additional evidence, the court agrees that there may be some instances in which Medicaid beneficiaries would delay or reject necessary non-emergency inpatient hospital treatment out of concern that they will be unable to afford to pay $325 toward its cost. Such a decision could well result in irreparable harm to the health of these individuals.

■ 2. *Balancing of Harms.* At the hearing on this motion, and in the plaintiffs' memoranda in support, they contended that the sole motive of the state for increasing the copay requirement is to achieve budgetary savings in the Medicaid program. The defendant did not refute that assertion. The plaintiff's argument is supported by the defendant's publication of the proposed amendment in the *Kansas Register*, an official state publication, on July 1, 1993. *See* 12 *Kansas Register* 1010 (No. 26, July 1, 1993). In that notice, the agency stated that the proposed change could be anticipated to generate $6.3 million in savings, of which $2.571 million

would be savings to the State General Fund.[5] In addition, in requesting reconsideration of the decision of the State Rules and Regulations Board on her request to implement the amendment earlier by temporary regulation, the defendant urged that the amendment was essential in order to meet budget targets for the state's current fiscal year.

The court recognizes that granting the requested temporary restraining order would impose a budgetary impact on the state. To the extent that the court's action delays implementation of the proposed amendment increasing the copay obligation, the state will generate less in savings than anticipated. However, the court finds that the relative budgetary impact the state would incur as a result of imposing a temporary restraining order is not very significant in comparison to the irreparable harm that would be caused the plaintiff hospitals and individual Medicaid beneficiaries if the amendment were permitted to go into effect. The state is in a much better position to absorb the budgetary impact of delayed implementation of the amendment as compared to individual plaintiffs, who would no doubt have great difficulty meeting the significantly increased copay requirement, and many small community hospitals, that may otherwise be required as a practical matter to absorb uncollectible copay charges.

The court further notes that the proposed amendment significantly alters the status quo to the detriment of the individual plaintiffs, while its positive budgetary impact on state coffers is negligible in a relative sense. The court therefore concludes that the threatened injuries to the plaintiffs outweigh any harm to the defendant that would result from issuing the temporary restraining order.

■ *3. Public Interest.* If the proposed copay increase is unlawful as the plaintiffs contend, then the effect of a temporary restraining order would be to enforce the federal law and regulations governing the Medicaid program and would clearly be in the public interest. While achieving budgetary savings is also in the public interest of state and federal taxpayers, that interest must give way if it is in conflict with federal substantive law. *See AMISUB, (PSL), Inc. v. State of Colo. Dep't of Social Services,* 879 F.2d 789, 800–01 (10th Cir.1989) (while state may consider budgetary constraints, such constraints may not excuse noncompliance with federal Medicaid law), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990). The court concludes that the injunction, if issued, would not be adverse to the public interest in that it is intended to enforce the public policy as expressed in federal statutes and regulations. *See Kansas Health Care Ass'n,* 822 F.Supp. at 699 (citing *Temple University v. White,* 941 F.2d at 220).

■ *4. Likelihood of Prevailing on the Merits.* Having established the first three prerequisites for temporary injunctive relief, the plaintiffs need only show that the issues presented are so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation. *See Tri–State Generation,* 805 F.2d at 358; *Franklin Savings Ass'n,* 732 F.Supp. at 1124–25. The court concludes that the plaintiffs have met this burden.[6]

**5.** Although the notice did not specify the period of time over which the anticipated savings would be generated, the court assumes the published figures are estimated annualized amounts for the current state fiscal year. The total amount budgeted for medical assistance programs in the fiscal year ending June 30, 1994, is $678.7 million, of which $162.8 million is allocated for inpatient hospital services.

**6.** The court nevertheless has reservations concerning whether 42 U.S.C. § 1983 permits the plaintiffs to bring this particular cause of action. Specifically, it is not clear to the court that 42 U.S.C. § 1396a(a)(14), 42 U.S.C. § 1396o(a)(3) or (b)(3), or their implementing regulations, 42

C.F.R. §§ 447.53–.58, convey to any of the plaintiffs a federal "right." *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106–07, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989); *Arkansas Medical Society, Inc. v. Reynolds,* 6 F.3d 519, 522–528 (8th Cir.1993); *cf. AMISUB (PSL) v. State of Colo. Dep't of Social Services,* 879 F.2d at 793 (42 U.S.C. § 1396a(a)(13)(A) implies private right of action under § 1983). Even if they do, it is possible that Congress has foreclosed judicial enforcement under 42 U.S.C. § 1983 if the statute envisions enforcement by an administrative scheme rather than by judicial review. *See Golden State Transit,* 493 U.S. at 106–07, 110 S.Ct. at 448–49; *see also Fulkerson v. Comm'r, Maine Dep't of*

The most persuasive argument advanced by the plaintiffs in support of their claims is that the proposed copay requirement of $325 per admission for inpatient hospital services is not "nominal in amount." The statutes authorizing the Medicaid program, 42 U.S.C. § 1396 et seq., permit the state to charge Medicaid beneficiaries for medical services, with certain categorical exceptions.[7] However, the statute places limitations on the state's authority to do so. Section 1396a(a)(14) provides that "[a] State plan for medical assistance must . . . provide that . . . deductions, costsharing, or other charges may be imposed only as provided in section 1396o of this title." Section 1396o(a) and (b)[8] both provide in part:

> The State plan shall provide that in the case of individuals . . . who are eligible under the plan—
>
> > (3) any deduction, cost sharing, or similar charge imposed under the plan . . . will be nominal in amount (as determined by the Secretary [of Health and Human Services] in regulations which shall, if the definition of "nominal" under the regulations in effect on July 1, 1982 is changed, take into account the level of cash assistance provided in such State and such other criteria as the Secretary determines to be appropriate). . . . ·

The regulations adopted by the Secretary to implement the statute[9] appear in 42 C.F.R. §§ 447.50–447.59 and provide in part:

§ 447.53 **Applicability; specification; multiple charges.**

(a) . . . [T]he plan may impose a nominal deductible, coinsurance, copayment, or similar charge upon categorically and medically needy individuals for any service under the plan.

§ 447.54 **Maximum allowable charges.**

(c) *Institutionalized Services.* For institutionalized services, the plan must provide that the maximum deductible, co-insurance or co-payment charge for each admission does not exceed 50 percent of the payment the agency makes for the first day of care in the institution.

§ 447.55 **Standard co-payment.**

(a) The plan may provide for a standard, or fixed, co-payment amount for any service.

(b) This standard copayment amount for any service may be determined by applying the maximum copayment amounts specified in § 447.54(a) and (b) to the agency's average or typical payment for that service. For example, if the agency's typical payment for prescribed drugs is $4 to $5 per prescription, the agency might set a standard copayment of $0.50 per prescription.

The plaintiffs contend that the $325 copay for each hospital admission is not a "nominal amount." While the court agrees that the proposed copay amount does not appear to be nominal as that term is generally understood, the statute delegates the authority to the Secretary of Health and Human Services to define the term "nominal" by federal regulation. Therefore, in order to determine whether the defendant's proposed copay for inpatient hospital services is "nominal," the

---

*Human Services,* 802 F.Supp. 529, 533 (D.Me. 1992). The court anticipates that the parties will more fully address this issue when the court hears argument on the motion for a preliminary injunction.

7. For example, the state may not require a copay for children, pregnant women for pregnancy-related services, or any beneficiary for emergency medical services. *See* 42 U.S.C. § 1396o (b)(2)(A), (B), (D); 42 C.F.R. § 447.53(b)(1), (2), (4).

8. Subsection (a) applies to Medicaid beneficiaries classified as "categorically needy" and subsection (b) to the "medically needy." *See* 42

C.F.R. § 447.53(a). The pertinent language with regard to the defendant's authority to charge a copay is identical in both subsections.

9. The court notes that the plaintiffs do not contend that the federal regulations are inconsistent with the federal statute that authorizes them, but rather that the defendant's actions and proposed state regulations are not in compliance with the federal regulations. Indeed, the plaintiffs could not challenge the federal regulations in this action, since the defendant named in the complaint is responsible only for promulgating the state regulations.

court must attempt to interpret and apply the federal regulations.

It appears to this court that the maximum amount the state can charge for inpatient hospital services is controlled by 42 C.F.R. § 447.54(c). Under that regulation, the maximum amount a beneficiary may be charged as a copay may not exceed half of the amount the defendant pays for the first day of inpatient care. In Kansas, the defendant sets payment rates to general hospital providers of inpatient services on the basis of diagnosis related groups (DRGs). *See* K.A.R. 30–5–58(a)(28); 30–5–81b(b); 30–5–81v(a). The plaintiffs have submitted evidence showing that for numerous DRG categories, the $325 copay amount would exceed half the daily rate the agency pays. The defendant at this early stage of the proceedings has not refuted this contention, nor offered any explanation to the court as to how the agency arrived at the $325 figure.

Furthermore, if, as the plaintiffs contend, the significant increase in the copay requirement is proposed solely because of its budgetary impact in favor of the state, the amendment would violate 42 U.S.C. § 1396a(a)(30)(A). That provision requires the state plan to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." As the courts have interpreted this statutory requirement, budgetary considerations alone cannot dictate decisions concerning changes in the Medicaid program. *See Arkansas Medical Society, Inc. v. Reynolds*, 6 F.3d 519, 530 (8th Cir.1993) (citing, *e.g., AMISUB (PSL), Inc. v. State of Colo. Dep't of Social Services*, 879 F.2d at 800–01).

Consequently, on the basis of the evidence presently available, the court concludes that the plaintiffs have presented issues so serious, substantial, difficult, or doubtful as to at least present a fair ground for litigation.[10] The court finds it difficult on the present showing to determine whether or not the proposed copay amount falls within the regulatory definition of "nominal." Furthermore, the defendant has not refuted plaintiff's contention, which is supported by evidence, that the amendment was proposed solely because of its budgetary implications, without considering the other factors as required by the federal statute.

Because the plaintiffs at this early stage of the proceedings have satisfied the four requirements for obtaining temporary injunctive relief, the court determines that a temporary restraining order is warranted to preserve the status quo until such time as the court considers, on the basis of evidence to be submitted by all parties, the plaintiffs' motion for a preliminary injunction.[11]

## TEMPORARY RESTRAINING ORDER

**IT IS BY THE COURT THEREFORE ORDERED** that the defendant is enjoined and restrained from implementing that part of the proposed amendment to K.A.R. 30–5–71 that would amend the present copay requirement applicable to Medicaid beneficia-

---

10. Although the plaintiffs raise several other arguments, the court finds it unnecessary to address each of them. At oral argument, the plaintiff hospitals essentially conceded one of the arguments concerning the defendant's failure to submit the proposed change to the Health Care Financing Administration (HCFA) for approval. In response to others, the defendant presented persuasive oral arguments in opposition. The court refrains from addressing the other arguments advanced by the plaintiffs until the defendant has had the opportunity to file a written response to the plaintiffs' motion for a preliminary injunction.

11. The court declines to rule at this time on the plaintiffs' motion for class certification (Doc. 5). Because of the nature of this temporary restraining order, all Medicaid beneficiaries will benefit from the injunctive relief it grants, whether or not a class is certified by this court. *See Kansas Health Care Ass'n*, 822 F.Supp. at 689. This court has no reason to doubt that the defendant will act consistent with this order in refraining from enforcing the amendment against all Medicaid beneficiaries. Further, the court is not persuaded that the legal basis for this action has any application to non-Medicaid beneficiaries such as plaintiff Gary Byers.

ries for inpatient hospital services, including those provided by general hospitals, free-standing psychiatric facilities, and specialty hospitals, from $25 to $325 per admission. However, this order does not enjoin the defendant from submitting the proposed State Medicaid plan amendment to the Health Care Financing Administration for approval as required by 42 C.F.R. §§ 430.10 *et seq.*

IT IS FURTHER ORDERED that the defendant shall mail notices to all Medicaid providers of inpatient hospital services directing them not to collect copayments for inpatient hospital services provided to Medicaid beneficiaries in excess of the $25 copay requirement presently in effect, until further notice.

IT IS FURTHER ORDERED that this temporary restraining order shall be effective only until such time as the court has ruled on the plaintiff's motion for preliminary injunction, following a hearing at which all parties shall have the opportunity to present evidence and further argument to this court.

IT IS FURTHER ORDERED that pursuant to Fed.R.Civ.P. 65(c), the plaintiffs shall give security in the amount of $100,000 for the payment of such costs and damages as may be incurred by the defendant if subsequently determined to have been wrongfully restrained by this order.

IT IS FURTHER ORDERED that this matter shall be set for hearing on the plaintiffs' motion for preliminary injunction on **Monday, October 25, 1993, at 1:30 p.m.**