Charlie M. JAMES, a minor, By and Through his next friend and natural guardian, K. Kevin JAMES, Plaintiff,

v.

UNIFIED SCHOOL DISTRICT NO. 512, JOHNSON COUNTY, KANSAS; City of Shawnee, Kansas; Harlan Hess; Marjorie P. Kaplan; Mark Hotzel; Tom Hayselden, Defendants.

No. Civ. A. 95–2380–GTV.

United States District Court, D. Kansas.

Sept. 6, 1995.

Gregory M. Coggs, Kansas City, KS, for K. Kevin James, Charlie M. James.

P. Stephen Martin, David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Unified School District No. 512, Johnson County, Kansas, and Marjorie P. Kaplan, Ph.D.

Matthew W. Tills, Kansas City, MO, Jack L. Fortini, Fortini, Magruder, Bolanovich & Tills, Kansas City, MO, for City of Shawnee, Kansas.

P. Stephen Martin, David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, for Harlan Hess.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This case is before the court upon plaintiff Charlie M. James' motion for a temporary restraining order (Doc. 2). Defendants Unified School District No. 512 (USD 512); Harlan Hess, associate vice principal of Shawnee Mission Northwest High School; and Marjorie P. Kaplan, Superintendent of Shawnee Mission Public Schools, responded to the motion. Henceforth, the term "defendants" shall refer only to these three.

After a hearing on September 1, 1995, the court took the matter under advisement. The court announced its decision to deny the motion on September 5, 1995, and now issues this memorandum and order to memorialize the ruling.

### Background

In the spring of 1995, plaintiff James was a sophomore at Shawnee Mission Northwest High School. The plaintiff alleges the following facts: On April 27, 1995, Mark Hotzel, a police officer and school resource officer, and Harlan Hess received anonymous tips that the plaintiff had a gun on school premises. During school the following day, April 28, 1995, Hotzel and Hess confronted James about the rumor and asked to search the plaintiff's vehicle. James was allowed to call his father, but not his attorney.

The parties disagree whether the plaintiff voluntarily consented to a search of his vehicle, which was parked on school property. The search occurred prior to the arrival of James' father. The plaintiff alleges that upon discovering a gun in his vehicle, Hotzel arrested him and then informed him of his *Miranda* rights.

Subsequently, Hess informed James and his father that James was suspended for five days. The Shawnee Mission Administrative Guidelines and Procedures prohibits possession of a gun on school property and requires school administration to suspend and to recommend expulsion of a student found in possession of a gun. (Pltf.'s Ex. 2, at 13.) USD 512 notified the plaintiff and his parents by letter dated April 28, 1995, that a hearing would be conducted on May 1, 1995, to determine if James' five-day suspension should be modified to a long-term suspension or expulsion. The letter was postmarked May 1, 1995, and the plaintiff and his family received it on May 2, 1995. (Pltf.'s Ex. 1.) Nonetheless, according to the record of the May 1, 1995 hearing the defendants have submitted, James and his father were present at the hearing. The May 1, 1995 hearing resulted in James being expelled from Shawnee Mission Northwest High School for the remainder of the 1994–95 school year, effective April 28, 1995, and for the first semester of the 1995–96 school year. James appealed the decision to the Board of Education, which conducted a hearing on May 19, 1995. The Board denied the appeal and affirmed the expulsion decision.

On August 29, 1995, James filed suit in federal court, requesting injunctive relief and monetary damages under 42 U.S.C. § 1983 for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights. The plaintiff asks that he be permitted to take his 1994–95 spring semester final exams or, in the alternative, be awarded the grades earned through April 28, 1995, and that he be permitted to attend Shawnee Mission Northwest High School during the 1995–96 school year.

### Discussion

The plaintiff must establish the following four elements to prevail on his motion for a temporary restraining order:

(1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

*Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992) (quoting *Tri–State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986)); *see Kansas Hosp. Ass'n v. Whiteman,* 835 F.Supp. 1548, 1551 (D.Kan. 1993). The decision to issue a temporary

restraining order is within the district court's discretion. *Id.*

The court first will examine the fourth element, whether there is a substantial likelihood the plaintiff will prevail on the merits. James raises Fourteenth Amendment due process violations, both substantive and procedural. *See Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1567–68 (10th Cir. 1993). "Public high school students do have substantive and procedural rights while at school." *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975).

### Substantive Due Process

The plaintiff apparently contends his substantive due process rights were violated in that the expulsion hearings were the direct result of an improper search and seizure by law enforcement officers of his vehicle and failure to *Mirandize* him. In the words of the United States District Court for the Southern District of Illinois,

> [t]he ultimate question here, of course, is whether the products of an illegal search and seizure are required to be excluded from an expulsion hearing before a local school board and whether school boards are going to be required to formulate some sort of suppression hearing to determine what evidence may be presented at such a hearing.

*M. v. Board of Educ. Ball–Chatham Community Unit Sch. Dist. No. 5, Chatham,* 429 F.Supp. 288, 291 (S.D.Ill.1977). The Illinois court never reached the merits of the question, finding the search was reasonable.

Assuming the plaintiff's Fourth and Fifth Amendment rights were violated, case law does not prohibit using the fruits of that violation in school disciplinary hearings. In *Pike v. Gallagher,* 829 F.Supp. 1254 (D.N.M. 1993), the court reviewed case law concerning application of the exclusionary rule. In *United States v. Janis,* 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976), the Supreme Court concluded that "[i]n the com-

plex and turbulent history of the rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." [1] In a footnote following this statement, the Court acknowledged application of the exclusionary rule "in a proceeding for forfeiture of an article used in violation of the criminal law." *Id.* at 447 n. 17, 96 S.Ct. at 3029 n. 17.

> [The *Janis*] Court held the exclusionary rule did not prohibit the Internal Revenue Service from using evidence illegally seized by the Los Angeles Police Department in a civil tax assessment. In *Janis,* the Court held the societal costs of excluding unlawfully seized evidence from federal civil proceedings outweighs the sufficient likelihood of deterring the conduct of state police officers. Therefore, the exclusionary rule does not prohibit the use of illegal evidence in a civil proceeding by a sovereign which was not involved in violating the Constitution in obtaining the evidence.

*Pike,* 829 F.Supp. at 1264 (citations omitted). The plaintiff acknowledges the Shawnee Police Department, not the defendants, conducted the search.

The *Pike* court also discussed *INS v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), in which the Supreme Court, after applying the *Janis* balancing test, held "that the exclusionary rule does not apply to 'intrasovereign' violations of the Immigration and Naturalization Service." *Pike,* 829 F.Supp. at 1264 (citation omitted). The *Lopez–Mendoza* court acknowledged the deterrence factor is greater in cases of "intrasovereign" violations; however, at least in the civil deportation hearing context, other factors outweigh the need for deterrence.

Prior to the *Lopez–Mendoza* decision, the Tenth Circuit Court of Appeals concluded the exclusionary rule was applicable in civil cases that can be characterized as "quasi-criminal." *See Savina Home Indus., Inc. v. Secretary of Labor,* 594 F.2d 1358, 1363 (10th Cir.1979) (exclusionary rule applicable to OSHA administrative hearings). According to the

---

1. *See also American Coal Co. v. Benefits Review Bd., U.S. Dep't of Labor,* 738 F.2d 387, 390 (10th Cir.1984) ("First, the Federal Rules of Evidence by their express terms apply only to proceedings in the federal courts and before U.S. Magistrates. Fed.R.Evid. 101, 1101. They are not intended to apply to administrative hearings.").

Tenth Circuit, "quasi-criminal" proceedings provide for punishment, such as civil money penalties and forfeitures of property, but are civil rather than criminal in nature. *Id.* at 1362 n. 5. School disciplinary hearings are not "quasi-criminal" proceedings. *See Nash v. Auburn Univ.*, 812 F.2d 655, 663–64 (11th Cir.1987); *Herbert v. Reinstein*, 1994 WL 587095, *5 (E.D.Pa.1994). The plaintiff acknowledges he cannot avail himself of the exclusionary rule in this context.

If the plaintiff is alleging a "general injustice" claim, that is, the penalty is too harsh for the offense, that allegation also must fail.

 "Review and revision of a school suspension on substantive due process grounds would only be available in a rare case where there was no 'rational relationship between the punishment and the offense.'" *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260, 264 (5th Cir.1985) (citation omitted); *see Petrey v. Flaugher*, 505 F.Supp. 1087, 1091 (E.D.Ky.1981) ("If a penalty is so grossly disproportionate to the offense as to be arbitrary in the sense that it has no rational relation to any legitimate end, it may be a violation of ... substantive due process.").

Although assuredly students have rights under the fifth and fourteenth amendments, education is not a fundamental right under the Constitution, and, as such, in determining whether a plaintiff's substantive due process right has been violated, the proper test is merely whether the government action is rationally related to a legitimate government interest. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 38–40, 93 S.Ct. 1278, 1299–1301, 36 L.Ed.2d 16 ... (1973). The Supreme Court has "repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials ... to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 ... (1969)....

*Hill v. Rankin County, Miss. Sch. Dist.*, 843 F.Supp. 1112, 1115–16 (S.D.Miss.1993); *see Craig v. Selma City Sch. Bd.*, 801 F.Supp. 585, 595 (S.D.Ala.1992) ("state action infringing on a person's right to obtain a public education is not unconstitutional under substantive due process analysis as long as that action is directed to a legitimate purpose and is rationally related to achieving that purpose"); *see also Garcia v. Miera*, 817 F.2d 650, 655 (10th Cir.1987) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980)) ("'the substantive due process inquiry in school corporal punishment cases must be whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience'"), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Expelling a student for possession of a weapon on school property does not violate substantive due process in that the penalty is not grossly disproportionate to the offense. *See, e.g., Mitchell v. Board of Trustees*, 625 F.2d 660, 663–64 (5th Cir.1980). Here, there is a rational relationship between the offense and the penalty. Schools have a legitimate interest in keeping weapons out of schools.

 Additionally, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis is wisdom or compassion." *Wood*, 420 U.S. at 326, 95 S.Ct. at 1003.

Local school boards have broad discretion in the management of school affairs. Federal courts should not ordinarily intervene in the resolution of conflicts which arise in the daily operation of school systems. Local school boards have a legitimate and substantial community interest in promoting respect for authority and traditional values.

*Haverkamp v. Unified Sch. Dist. No. 380*, 689 F.Supp. 1055, 1058 (D.Kan.1986) (citing *Board of Educ. v. Pico*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982)); *see Mitchell v. Board of Trustees of Oxford Municipal Separate Sch. Dist.*, 625 F.2d 660, 664 (5th Cir.1980) ("school disciplinary matters are best resolved in the local community and within the school system").

The plaintiff has failed to show a substantial likelihood that he will succeed on the merits of his substantive due process claim.

### Procedural Due Process

■ In *Goss v. Lopez*, 419 U.S. 565, 581, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975), the Supreme Court held that "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." The Court added that "[t]here need be no delay between the time 'notice' is given and the time of the hearing" and that the hearing may be informal. *Id.* at 582, 95 S.Ct. at 740. The *Goss* Court left unanswered what process is due in expulsion cases: "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding ten days. Longer suspensions or expulsion for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584, 95 S.Ct. at 741.

■ Prior to *Goss*, the Tenth Circuit stated "that due process entitles students in the public schools to be accorded the rudimentary elements of a hearing before they are expelled or suspended for a length or indefinite period, absent some extraordinary situation requiring immediate action before a hearing." *Hatch v. Goerke*, 502 F.2d 1189, 1194–95 (10th Cir.1974). Subsequent to *Goss*, the Fourth Circuit Court of Appeals, in an unpublished opinion, summarized the process due:

"[A] student facing expulsion or suspension from a public educational institution is entitled to the protections of due process." *Gorman v. University of Rhode Island*, 837 F.2d 7, 12 (1st Cir.1988). The process that is due is not the judicial model of a civil or criminal trial, *see Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976); *Nash v. Auburn University*, 812 F.2d 655, 660 (11th Cir.

1987). Rather, due process requires advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker. *See Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970); *Nash v. Auburn University*, 812 F.2d at 661–663, 665.

*Tellefsen v. University of North Carolina at Greensboro*, 877 F.2d 60, 1989 WL 64301 (4th Cir.1989); *see Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 927 (6th Cir.1988) ("A student faced with expulsion has the right to a pre-expulsion hearing before an impartial trier-of-fact—he does not have the right to a full-blown administrative appellate process."); *Baxter v. Round Lake Area Sch.*, 856 F.Supp. 438, 444 (N.D.Ill.1994) (quoting *Linwood v. Board of Educ. of City of Peoria*, 463 F.2d 763 (7th Cir.), *cert. denied*, 409 U.S. 1027, 93 S.Ct. 475, 34 L.Ed.2d 320 (1972)) ("due process in the context of an expulsion hearing 'is not to be equated ... with that essential to a criminal trial or a juvenile court delinquency proceeding'").

Even assuming the plaintiff did not receive advance *written* notification of the May 1, 1995 hearing, he received some notification because he and his father attended the hearing. The hearing record indicates both James and his father were given the opportunity to speak.[2] James does not allege the decision-maker was biased.

One court has concluded that "[a]ll that is constitutionally required of notice of an expulsion hearing is that students receive 'a statement of the charge against them.'" *Craig v. Selma City Sch. Bd.*, 801 F.Supp. 585, 592 (S.D.Ala.1992) (quoting *Nash*, 812 F.2d at 663). Even if the plaintiff did not receive a written statement of the charge against him prior to the May 1, 1995 hearing, he had received an oral statement of the charge. Additionally, he received a written statement prior to the May 19, 1995 hearing. The defendants advise that at the May 19, 1995 hearing, James was represented by

---

**2.** According to the plaintiff and his father, the gun found in the vehicle belonged to the plaintiff's sister. James' sister and husband recently moved in with the family, and James' brother-in-law had borrowed the plaintiff's vehicle prior to the incident. James stated he first noticed the gun when driving to school on April 28, 1995.

counsel and was allowed to present evidence and cross-examine witnesses. The plaintiff does not dispute this fact.

The defendants afforded James all the process that he is due under the Fourteenth Amendment. The plaintiff has failed to show a substantial likelihood that he will succeed on the merits of his procedural due process claim.

James did not file a petition for review of the Board's decision pursuant to the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. § 77–601 *et seq.*, within the allotted time; however, he has had the opportunity to explore state administrative procedures. This case possibly belongs back in state court.

Because the plaintiff has failed to establish an essential element, he cannot prevail on his motion for a temporary restraining order.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff Charlie M. James' motion for a temporary restraining order (Doc. 2) is denied.

**IT IS SO ORDERED.**