**Michael MARTENS, By and Through his father and next friend, Philip MARTENS, Plaintiff,**

v.

**DISTRICT NO. 220, BOARD OF EDUCATION, et al., Defendants.**

**No. 82 C 3414.**

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1985.

---

**30**

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

### I.

At about 10:30 a.m. on April 29, 1982, Joan Baukus, dean of students at Reavis High School, received an anonymous phone call. The caller identified herself as living in the Sahs area of Stickney, Illinois. The caller said that she had discovered her daughter with marijuana cigarettes purchased from James Lafollette, a student at Reavis. The caller said Lafollette kept marijuana in a Marlboro box in his school locker, and that the box was in the locker that day. Baukus tried unsuccessfully to persuade the caller to reveal her name or leave a phone number. Baukus then had Lafollette open his locker. There, as promised, was a Marlboro box containing marijuana cigarettes.

At about 12:30 p.m. the same day, Baukus received another phone call from a woman Baukus believed to have been the earlier anonymous tipster, although she was not sure. This second caller identified herself as living in the Sahs area. She said she had discovered her daughter in possession of marijuana cigarettes. The caller indicated that her daughter had purchased the marijuana from James Lafollette and the plaintiff, Michael Martens. The caller said Martens kept drug paraphernalia in the lining of his coat and that he might have paraphernalia in his possession that day. Baukus was again unsuccessful in persuading the caller to reveal her name or phone number.

Martin J. Healey Jr., Chicago, Ill., for plaintiff.

Robert A. Lewinthal, Fred Sudak & Associates, Chicago, Ill., for defendants.

### MEMORANDUM AND ORDER

MORAN, District Judge.

This case stems from the warrantless search of the student plaintiff on school property. It raises several interesting questions under the Fourth Amendment of the Constitution, which reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

At about 1:15 p.m. Baukus brought Martens to her office and confronted him with the substance of the phone call. Martens denied he had a controlled substance in his possession and refused to consent to a search until his parents were contacted. Baukus was unable to reach either of Martens' parents over the next 45 minutes.

At this point Officer Hentig, a Cook County Sheriff's deputy, came into Baukus' office and spoke to Martin. Hentig was at the school on another matter. There is no indication that he supplied any evidence implicating Martens or directed school officials to detain Martens for questioning. He told Martens that based on his experience it would be better to cooperate with school officials. Hentig then asked Martens to empty his pockets and Martens complied. A pipe in Martens possession was later found to have contained marijuana residue.

Martens was suspended from school on May 10, 1982, pending a hearing before the Board of Education on May 18, 1982. At that hearing Martens was represented by counsel, presented witnesses and cross examined adverse witnesses. The transcript of the hearing covers 23 single-spaced pages. At the conclusion of the hearing the Board decided to expel Martens for the remainder of the school year. This order was not entered on Martens' permanent record and was not revealed to colleges or prospective employers. Martens faced no criminal charges as a result of the search. At the time of the expulsion Martens was at the end of his junior year. Martens claims, tardily, that the expulsion kept him from graduating a semester early, as he had planned.

Martens' complaint for a temporary restraining order has long since become an action for damages. Martens claims, first, that the search violated his Fourth Amendment rights and, second, that the illegally seized evidence was improperly admitted at the expulsion hearing before the school board. This court delayed ruling on defendant's motion for summary judgment until after the Supreme Court handed down its decision in *New Jersey v. T.L.O.*, — U.S. ——, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

## II.

Young people are not stripped of their constitutional rights upon entering the schoolhouse. The Supreme Court has rec-ognized that students are protected by the proscriptions of the First, Eighth and Fourteenth Amendments. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (First Amendment), *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (Eighth Amendment), *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (Fourteenth Amendment). In *T.L.O.* the Supreme Court rejected the argument that school administrators act *in loco parentis* and are not subject to the dictates of the Fourth Amendment. The Court held that the Fourth Amendment does apply to searches by school officials. 105 S.Ct. at 740–41.

While honoring the notion that students have Fourth Amendment rights, the *T.L.O.* Court limited those rights in order to accommodate the school's need to preserve order and a proper educational environment. First, the Court held that school officials need not obtain a warrant before searching a student. 105 S.Ct. at 743. According to the Court, the warrant requirement is unsuited to the school environment because it "would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." *Id.*

As a second concession to school officialdom, the *T.L.O.* Court rejected "probable cause" as the touchstone for determining the legality of school searches. It held that "the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." 105 S.Ct. at 743–44. In determining the reasonableness of a search, a court must consider, first, whether the search was justified at its inception and, second, whether the scope of the search was reasonably related to the circumstances that prompted the search. *Id.* at 744. The difference in the quantum of information required under the probable cause and reasonableness standards is quite unclear, although the Court seems to indicate that the courts should look to the reasonableness standards of *Terry v. Ohio*, 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny for guidance.

This case differs from *T.L.O.* in one important respect. *T.L.O.* involved the search of a student on school grounds by a school official. In this case the disgorgement was in the presence of and at the urging of a police officer. Apparently happening into Baukus' office, Officer Hentig told Martens that cooperation was indicated. At this point Martens broke a 45-minute stalemate and emptied his pockets. Yet, the record also indicates that Hentig had nothing to do with developing the facts that prompted Baukus to detain Martens in her office. Nor did Hentig direct school officials to detain and search Martens. In short, Hentig's urging was the immediate cause of Marten's emptying his pockets, but there is no indication that a criminal investigation was contemplated, that this was a cooperative effort with law enforcement, or that but for his intervention Martens would not have been searched eventually. *See T.L.O.*, 105 S.Ct. at 744 n. 7. The interest that prompted the *T.L.O.* Court to waive the warrant requirement and to adopt a reasonableness standard—preserving swift and informal disciplinary procedures—would not be served by imposing warrant and probable cause requirements here in light of Hentig's relatively limited role. There is, here, no basis for thinking that school official action was a subterfuge to avoid warrant and probable cause requirements.

The school officials certainly had reasonable suspicions and, indeed, probably probable cause to search Martens. Under the totality-of-circumstances test of *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the anonymous tip was adequate to satisfy even the higher standard. First, the high school was facing a substantial drug problem that had resulted in the expulsion of many students before Martens. A tip that a Reavis student had drug paraphernalia was thus not inherently implausible. Second, coming from a member of the public rather than the typical police informer from the criminal milieu, the tip was presumptively somewhat more credible. Third, there was substantial evidence indicating the tip was accurate. Baukus believed that the Martens tip came from the same caller who had accurately indicated that another student possessed marijuana. There is some other evidence suggesting that the tipster was indeed the same person. Both were female, lived in the same area, had discovered their daughter in possession of marijuana, and refused to disclose their identity or phone number. Finally, the Martens tip was not a blanket allegation but rather outlined Martens' role as a drug distributor, described where he kept his drug paraphernalia and indicated that Martens had the paraphernalia in his possession that day. The detailed nature of the tip weighs in favor of its accuracy. Finally, even if there were not probable cause, the reasonable suspicion led to measures reasonably related to the objectives of the search and not excessively intrusive. A high school junior was asked, in a school office during school hours and in light of specific information relating to marijuana, to empty his pockets, and he reluctantly complied.

### Conclusion

Defendant's motion for summary judgment is granted.