810 F.2d 188
 37 Ed. Law Rep. 473
 Shy CASON, Appellant,
v.
Connie COOK, In her official capacity as Vice Principal of
North High School; Wanda Jones, In her official capacity as
a detective of the Des Moines Police Department; William A.
Anderson, In his official capacity as Superintendent of
Schools; The Des Moines Independent School District; and
the Des Moines Police Department, Appellees.
 No. 85-2393.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 14, 1986.
Decided Jan. 28, 1987.
 
 1
 Thomas Mann, Jr., Des Moines, Iowa, for appellant.
 
 
 2
 Elizabeth Gregg Kennedy, Des Moines, Iowa and J.M. Sullivan, Des Moines, Iowa, for appellees.
 
 
 3
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and NICHOL,* Senior District Judge.
 
 
 4
 NICHOL, Senior District Judge.
 
 
 5
 Shy Cason appeals from the district court's[1] grant of a directed verdict in favor of the appellees. Shy brought this action pursuant to 42 U.S.C. section 1983 alleging that her constitutional rights to due process and to be free from unreasonable search and seizure were violated when she was removed from her high school classroom, questioned, and both her person and possessions were searched by the appellees Cook and Jones. Shy also alleged constitutional violations on the part of appellees Anderson, the Des Moines Independent School District and the Des Moines Police Department, claiming that their failure to promulgate rules and their failure to properly train and supervise violated her right to due process. In addition, the appellant raised several pendent state law claims. The district court directed a verdict at the close of all the evidence after determining that there was no constitutional violation of the appellant's rights. We affirm.
 
 I. BACKGROUND
 
 6
 When addressing the propriety of a directed verdict, the evidence, together with all of the reasonable inferences to be drawn therefrom, is to be viewed in the light most favorable to the nonmoving party. Schlothauer v. Robinson, 757 F.2d 196 (8th Cir.1985) (per curiam); Dobson v. Bacon Transport Co., 607 F.2d 805, 806 (8th Cir.1979); Hauser v. Equifax, Inc., 602 F.2d 811, 814 (8th Cir.1979). The motion for directed verdict should be granted only when the nonmoving party has presented insufficient evidence to support a jury's verdict in his favor. Hauser at 814.
 
 
 7
 Viewing the evidence in the light most favorable to Shy, the stipulated facts and the record evidence show that on May 17, 1983, Shy was a student at North High School in Des Moines, Iowa. At approximately 12:20 p.m. on that date, a student approached the appellee Connie Cook, the vice-principal of North High School, and told her that her locker had been broken into and that she was missing a pair of sweatpants and a duffle bag. She also reported that a friend was missing a pair of sweatpants. At approximately 12:40 p.m., another student approached Ms. Cook and reported that her wallet and coin purse had been taken from her gym locker. The student reported that the wallet contained $65 along with several credit cards. Ms. Cook recorded a detailed description of the missing items.
 
 
 8
 Standing with Ms. Cook when these reports were made was the appellee Wanda Jones, a police officer who had been assigned to North High School as a liaison officer pursuant to an established police liaison program between the Des Moines Police Department and the school district. The liaison program is funded jointly by the police department and the school district. The officer does not wear a police uniform and drives an unmarked automobile. The liaison officer is instructed to cooperate with the school officials.
 
 
 9
 After receiving the reports of stolen items, Ms. Cook decided to investigate the alleged thefts and asked Ms. Jones if she would accompany her to the locker room. Ms. Cook interviewed several students in the locker room and was supplied with the names of four students who had been seen in the locker area around the time of the thefts: Shy Cason, Jerrie Harvey, Monica Harvey and Tabatha Prather. These four students did not have permission to be in the locker area at this time nor were they assigned to the gym class of the prior period. Ms. Cook also recalled having seen Shy, Jerrie and Monica together in the lobby just prior to receiving the reports of the thefts.
 
 
 10
 Ms. Cook and Ms. Jones then proceeded to the office where Ms. Cook checked the schedules of the four students. Ms. Cook again asked Ms. Jones to accompany her as she interviewed each of the students. Jerrie was removed from her classroom by Ms. Cook and was taken into an empty classroom where she was questioned. Ms. Jones did not participate in this questioning and in fact, remained in the hallway during this time period. Shy and Monica were then removed from their classroom and taken into an empty restroom. Shy testified that Monica remained outside and that she was taken into the restroom and that Ms. Cook locked the door. Ms. Jones was also inside the locked restroom but again did not participate in any questioning of Shy.
 
 
 11
 Ms. Cook informed Shy why she was being questioned and allowed Shy an opportunity to respond. After Shy admitted being in the locker room but denied having any of the missing items, Ms. Cook told Shy that she was going to search her purse. Ms. Cook then took Shy's purse and dumped the contents onto a shelf in the restroom. In Shy's purse was a coin purse that matched exactly the description of the missing coin purse. After this purse was found, Shy testified that Ms. Jones conducted a pat-down search of Shy from her shoulders to her toes while Shy was made to stand against the wall with her hands up and legs spread.
 
 
 12
 Monica and Shy were then taken to the office area and on the way, Shy was asked by Ms. Cook to open her locker and a search of the locker was conducted by Ms. Cook. At the office, Monica and Shy were placed in separate rooms with Ms. Jones remaining with Monica while Ms. Cook continued to question Shy. Ms. Jones did not participate in the questioning of either Shy or Monica at this point. It was learned that Shy and Jerrie were in fact involved with the thefts and Jerrie was summoned to come to the office. Ms. Jones did participate in a joint interview with Shy and Jerrie and when the two girls could not agree on the events that had transpired in the locker room, Ms. Jones presented each girl with a juvenile appearance card. Juvenile appearance cards are utilized by the police liaison program whenever possible in lieu of an arrest. The card required each of the girls and their parents to report to Ms. Jones' office at the police station on May 19, 1983.
 
 
 13
 Shy's mother was not made aware of the events of this day until she arrived to pick up Shy after school. No attempt was made to contact Shy's mother prior to any questioning or the search of Shy and her possessions. While at school, Shy was not informed of a right to remain silent or of a right to counsel. Both Shy and her mother signed a waiver and consent form before they visited with Ms. Jones at her office on the 19th. Each of the girls was suspended from school and after meeting with Ms. Jones no further action was taken.
 
 II. DISCUSSION
 
 14
 In May of 1983, it had been firmly established that schoolchildren do not shed their constitutional rights at the schoolhouse gates. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969) (First Amendment); Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (Due Process); Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (Eighth Amendment). In 1985, the Supreme Court addressed the Fourth Amendment and its application in the school setting. Consistent with the above opinions, the Court held that the Fourth Amendment right to be free from unreasonable search and seizure applies to a search by a school official. New Jersey v. T.L.O., 469 U.S. 325, 333, 105 S.Ct. 733, 739, 83 L.Ed.2d 720 (1985) (T.L.O.).
 
 
 15
 After the Court determined that the Fourth Amendment applied in the school setting, it further discussed the extent of the protection afforded the schoolchildren. Balancing the interests of the children's privacy and the need to maintain discipline in the school setting, the Court held that the warrant requirement was unsuited to the school environment: "requiring a teacher to obtain a warrant before searching a child suspected of an infraction of school rules (or of the criminal law) would unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." Id. at 340, 105 S.Ct. at 743. In addition to eliminating the warrant requirement, the Court also reduced the level of suspicion of illicit activity that is needed to justify a search. Id. "[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." Id. at 341, 105 S.Ct. at 743.
 
 
 16
 In determining whether a given search is reasonable, the Court provided further guidance: The inquiry into the reasonableness of a search is twofold: First, the action must be justified at its inception and second, the scope of the search must be reasonably related to the circumstances which justified the interference in the first place. Id. ( citing Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). A search satisfies the first inquiry when there are reasonable grounds for suspecting that the search will uncover evidence of a rule or criminal violation. The second inquiry is satisfied when "the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Id. at 342, 105 S.Ct. at 744 (footnote omitted).
 
 
 17
 The Court did note, however, that it was not addressing the question of what standard would apply when a search is conducted by school officials in conjunction with or at the behest of law enforcement agencies and expressed no opinion on that subject. Id. at 341 n. 7, 105 S.Ct. at 744 n. 7 (emphasis added). This is the precise question that is presented to this court by the case at bar: Whether the reasonableness standard should apply when a school official acts in conjunction with a police liaison officer. The district court found that the reasonableness standard was the correct standard and that the appellee Cook had met this standard and thus there was no violation of the appellant's constitutional rights. We agree.
 
 
 18
 There is no evidence to support the proposition that the activities were at the behest of a law enforcement agency. The uncontradicted evidence showed that Ms. Cook, the school official, conducted the investigation of the thefts that had been reported to her. Ms. Jones' involvement was limited to a pat-down search conducted after a coin purse matching the description of the one stolen was found and to briefly interviewing Shy and Jerrie and presenting juvenile appearance cards to the girls. At most, then, this case represents a police officer working in conjunction with school officials.
 
 
 19
 In Martens v. District No. 220, 620 F.Supp. 29 (N.D.Ill.1985), the district court addressed a very similar question. The school official had received an anonymous phone call implicating the plaintiff in drug-related activities. The plaintiff was called into the office but refused to consent to a search until his parents were contacted. Id. at 30. While waiting in the office, a deputy sheriff came in (the deputy had come to the school on another matter). The deputy told the plaintiff that based on his experience it would be best to cooperate. The deputy then asked the plaintiff to empty his pockets and the plaintiff complied. Id. at 30-31.
 
 
 20
 The court recognized that the involvement of the police officer distinguished this case from T.L.O.; however, the court held that, "[T]he interest that prompted the T.L.O. Court to waive the warrant requirement and to adopt a reasonableness standard--preserving swift and informal disciplinary procedures--would not be served by imposing warrant and probable cause requirements here" in light of the limited role of the deputy. Id. at 32. The district court noted that the deputy had not helped to develop the facts that prompted the search of the plaintiff nor had he directed that the plaintiff be detained and searched. There was no indication that but for the deputy's involvement, the plaintiff would not have been searched. Id. Finding that the school official's actions were based on reasonable suspicion and reasonable in scope, the court held that there was no constitutional violation. Id.
 
 
 21
 In Tartar v. Raybuck, 742 F.2d 977 (6th Cir.1984), cert. denied, 470 U.S. 1051, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985),[2] the plaintiff raised the question of the appropriate standard to apply when a school official acts in conjunction with law enforcement. The school officials here were investigating possible drug usage and sales on school property. Id. at 979. After the school officials had confronted several students, the police were summoned and several students were removed. Id. at 979, 983. The plaintiff was questioned further by the school officials and when he refused to remove his pants for a search, the police were again summoned. Id. at 979-80. The plaintiff argued that due to this police involvement, the correct standard to apply was that of probable cause and a warrant. Id. at 983.
 
 
 22
 The court found that the police involvement with respect to the plaintiff was marginal. Further, since this was an action brought pursuant to 42 U.S.C. section 1983 for damages, the Sixth Circuit declined to draw any distinction between school officials acting alone and those incidents where the officials act in conjunction with law enforcement. Id. at 984.
 
 
 23
 We find the reasoning of the district court in Martens to be persuasive. The imposition of a probable cause warrant requirement based on the limited involvement of Ms. Jones would not serve the interest of preserving swift and informal disciplinary procedures in schools. Ms. Jones did not conduct any of the initial interviews of the students and participated in a pat-down search only after evidence was discovered. Ms. Cook, on the other hand, made the initial determination to investigate the reported thefts and conducted the investigation. This school official procured the names of four students who had been seen in the locker room area at an unscheduled time and without permission. Ms. Cook also recalled having personally observed these same students together in the hall just prior to receiving the reports of the thefts. The students were removed from their classrooms by Ms. Cook and each was provided with an explanation as to the reason for their removal and was provided with an opportunity to respond prior to any search.
 
 
 24
 It was Ms. Cook who conducted the search of Shy's purse which led to the discovery of the coin purse. It was only after this discovery that Ms. Jones conducted a limited pat-down search of Shy. The only other involvement of the police liaison officer occurred when the students were unable to agree on the events that had transpired in the locker room. This involvement was limited to some questioning and the issuance of juvenile appearance cards.
 
 
 25
 It is clear that the correct standard to apply under the circumstances presented in this case is the standard enunciated by the Court in T.L.O.: Whether the search was reasonable under all of the circumstances. Based on the foregoing discussion of the facts, the initial search of the appellant's purse was based on a reasonable suspicion that Shy Cason had been involved in a violation of school rules and of the criminal law. The subsequent pat-down search was made when this suspicion was increased due to the finding of physical evidence in the appellant's possession. In addition, the scope of the search was reasonable. The theft victim had reported $65 as missing along with her wallet. Due to the nature of this missing item, patting down the appellant was not "excessively intrusive in light of the age and sex of the student and the nature of the infraction." T.L.O., 469 U.S. at 342, 105 S.Ct. at 744.
 
 
 26
 We find that based on the stipulated facts and record evidence, and viewing the evidence in a light most favorable to the appellant, the appellant presented insufficient evidence to support a jury's verdict in her favor. We do not hold that a search of a student by a school official working in conjunction with law enforcement personnel could never rise to a constitutional violation, but only that under the record as presented to the court, no such violation occurred here. The district court did not err in granting a directed verdict at the close of all the evidence.
 
 
 27
 Since we have found no constitutional violation, the remaining allegations against the Des Moines Police Department, the appellee Anderson and the Des Moines Independent School District need not be addressed.
 
 
 28
 The appellant also raised several pendent claims based on her allegation that Ms. Jones failed to abide by the requisite sections of the Iowa Code relating to juveniles, specifically Iowa Code sections 232.11 and 232.19. These claims are based on Shy's assertion that she was taken into custody by Ms Cook and Ms. Jones when she was taken both into the restroom and into the school office. There is simply no support for this proposition. See, Boynton v. Casey, 543 F.Supp. 995, 998 (D.Me.1982) (plaintiff questioned by school official for over one hour on the school grounds not custodial interrogation); In Interest of J.A.N., 346 N.W.2d 495, 499 (Iowa 1984) (Custodial interrogation is questioning initiated by law enforcement officers). Thus, the fact that Shy was not informed of a right to remain silent and a right to counsel is not relevant. When Shy and her mother did in fact meet with Ms. Jones, each signed a consent and waiver of these very rights before the interview began. Because Shy was not in custody, her accusation that the failure to notify her mother prior to any questioning or the search violated her rights also fails. See, Pollnow v. Glennon, 594 F.Supp. 220, 224 (S.D.N.Y.1984), aff'd, 757 F.2d 496 (2nd Cir.1985); Boynton v. Casey, 543 F.Supp. at 998.
 
 
 29
 Accordingly, the order of the district court is affirmed.
 
 
 
 *
 The Honorable Fred J. Nichol, Senior United States District Judge, District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable William C. Hanson, Senior United States District Judge, Southern District of Iowa
 
 
 [2]
 Although Tartar v. Raybuck predated T.L.O., the Sixth Circuit applied the same reasonable cause standard when it addressed the question of a search by a school official. Tartar is cited with approval by the Court in T.L.O.. T.L.O., 469 U.S. at 332 n. 2, 341 n. 6, 105 S.Ct. at 738-39 n. 2, 743 n. 6