Charlie M. JAMES, a minor, by and through his next friend and natural guardian, K. Kevin JAMES, Plaintiff,

v.

UNIFIED SCHOOL DISTRICT NO. 512, Johnson County, Kansas; City of Shawnee, Kansas; Harlan Hess; Marjorie P. Kaplan; Mark Hotzel; and Tom Hayselden, Defendants.

Civil Action No. 95–2380–GTV.

United States District Court, D. Kansas.

March 28, 1997.

Gregory M. Coggs, Kansas City, KS, for Plaintiff.

P. Stephen Martin, David C. Wetzler, Bennett, Lytle, Wetzler, Martin & Pishny, L.C., Prairie Village, KS, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Unified School Dist. No. 512, Johnson County, Kan., Harlan Hess, Marjorie P. Kaplan, Ph.D.

Matthew W. Tills, Kansas City, MO, Jack L. Fortini, Fortini & Magruder, Kansas City, MO, for City of Shawnee, Kan., Mark Hotzel, Tom Hayselden.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff Charlie M. James brings this action pursuant to 42 U.S.C. § 1983, alleging that the events relating to his expulsion from high school for possession of a handgun on school property violated his Fourth, Fifth, and Fourteenth Amendment rights. The case is before the court upon motions for summary judgment based on qualified immunity by defendants Marjorie P. Kaplan and Harlan Hess (Doc. 41) and defendants Mark Hotzel and Tom Hayselden (Doc. 45).[1] For the reasons stated below, the motions are granted.

### I. Background

The following facts are from the memoranda and exhibits the parties have submitted and are uncontroverted unless otherwise noted. Immaterial facts and facts not properly supported in the record are omitted. *See* D. Kan. Rule 56.1.

In the spring of 1995, Charlie M. James was a sophomore at Shawnee Mission Northwest High School. Harlan Hess was associate principal at Shawnee Mission Northwest High School, and Marjorie P. Kaplan was superintendent of Unified School District No. 512 (USD 512). Mark Hotzel was an officer with the City of Shawnee Police Department and assigned to Shawnee Mission Northwest High School as the school resource officer. Thomas K. Hayselden, Jr., was Chief of Police for the City of Shawnee.

On the evening of April 27, 1995, Hotzel received a telephone call from an anonymous individual purporting to be the parent of a student enrolled at Shawnee Mission Northwest High School. The caller told Hotzel that James had a handgun in the driver's compartment of his vehicle and previously had brought the gun onto school premises. Hotzel was acquainted with James and, in fact, had met informally with him to discuss prior legal problems.

The parties dispute, in part, what occurred at school the following day. According to the defendants, after arriving at school on April 28, 1995, Hotzel shared the anonymous rumor with Hess. Hotzel and Hess then met with Hank Goodman, a district-employed campus police officer assigned to Shawnee Mission Northwest High School. All three

---

1. Although defendants Unified School District No. 512 and City of Shawnee, Kansas joined in the numerous motions for extensions of time in briefing the pending motions, they have not joined in the actual motions for summary judgment.

went to the location of James' first-hour class, auto-tech. Hotzel asked the teacher not to let James leave the classroom. Approximately ten minutes later, Hotzel, Hess, and Goodman entered the classroom. Hotzel and/or Hess either motioned for or asked James to join them in the auto-tech office. Hess then confronted James about the rumor that he had a gun in his vehicle. Hess advised James that they would like him to disprove the rumor by opening his vehicle, which was parked on school property.

James' version is very similar. Hotzel came into his auto-tech classroom, and the teacher, a commissioned reserve police officer, left the room with Hotzel. Hotzel returned about ten minutes later, accompanied by Hess and Goodman. Hotzel indicated that James should join them. Hotzel told James about the rumor that he had a gun in his vehicle. Surrounded by two police officers and the associate principal, James felt scared.

The defendants state that James asked to telephone his father, Kevin James, and was allowed to do so. When James called his father, Hotzel also spoke with James' father. Hotzel says that James' father admitted the vehicle his son had driven to school contained a hand gun and consented to Hotzel searching the vehicle and removing the gun. James' father also stated that he was concerned, wanted to be present, and would be at the school in twenty to thirty minutes. After the telephone call ended, James consented to the search.

According to James, he told Hotzel that the vehicle belonged to his father and that he wanted his father or an attorney present before he said anything. Hotzel's testimony is inconsistent whether James asked for an attorney at that point.[2] Hess maintains that James never asked for an attorney.

James states that he was allowed to call his father. After speaking with his father for about five minutes, Hotzel came into the office and asked if he should talk to James' father. James agreed, and Hotzel visited with James' father. James did not speak

with his father after Hotzel. At the conclusion of the telephone call, Hotzel said, "well let's go get it." (Pl.'s Aff., at 2.) James asked what his father had said. Hotzel said that James' father wanted the matter resolved as quickly as possible. James said he would do whatever his father advised. According to James' father, he told Hotzel that the vehicle belonged to him, that he wanted to be present for the search, and that he would be there in twenty to thirty minutes.

The defendants allege that Hotzel, Hess, Goodman, and James then walked to James' vehicle. Hess states that within a couple of minutes after reaching the vehicle, another police officer in a Shawnee police car arrived on the scene. Hess adds that the officer and Hotzel conferred twenty to thirty feet away from James' vehicle prior to the search. Hotzel then walked back to James' vehicle and asked James to unlock the door. James complied. Hotzel's testimony is inconsistent whether he asked James where the gun was or whether James volunteered the information when Hotzel did not locate the gun. Hotzel located a Lorcin 380 hand gun loaded with a full clip of live ammunition in the compartment between the seats.

James agrees that he, Hotzel, Hess, and Goodman walked to the James vehicle. James contends that Hotzel took his car keys, unlocked the vehicle, and proceeded to search the glove box. When Hotzel did not find the gun, he asked James where it was. James told him the gun was in the compartment between the seats.

Hotzel declares that after finding the loaded gun, he called his direct supervisor, who drove to the scene and authorized James' arrest. Hotzel then informed James that he was under arrest for unlawful use of a weapon. *See* K.S.A. § 21–4201. Once they were back inside the school building, Hotzel read James his *Miranda* rights and waited for James' father to arrive.

James adds that his father arrived about ten minutes after Hotzel and Goodman took

---

2. At the Johnson County District Court proceeding, Hotzel denied that James had asked for an attorney. Hotzel acknowledged, however, that at the school board appeal hearing he had stated

that James had asked to call his father and an attorney. Hotzel testified that he answered incorrectly at the appeal hearing because he was confused by the series of questions asked.

him to the police office in the school building and Hotzel gave the *Miranda* warning.

Hess subsequently informed James and his father that James was suspended for five days. The Shawnee Mission Administrative Guidelines and Procedures prohibit possession of a gun on school property and require school administration to suspend and to recommend expulsion of any student found in possession of a gun. USD 512 conducted a hearing on May 1, 1995, to determine if James' five-day suspension should be modified to a long-term suspension or expulsion. The May 1, 1995 hearing resulted in James being expelled from Shawnee Mission Northwest High School for the remainder of the 1994–95 school year, effective April 28, 1995, and for the first semester of the 1995–96 school year. James appealed the decision to the Board of Education, which conducted a hearing on May 19, 1995. The Board denied the appeal and affirmed the expulsion decision.

On August 29, 1995, James filed suit pursuant to 42 U.S.C. § 1983, alleging that there was no probable cause to search his vehicle, no consent to the search, no valid search warrant, and no search incident to a valid arrest. He also contends that the defendants required him to make incriminating statements and did not provide assistance of counsel upon his request. Finally, the plaintiff alleges his expulsion from school violated procedural and substantive due process. The plaintiff seeks compensatory damages for psychotherapy, psychological anguish, pain and suffering as well as punitive damages.

Based upon the alleged due process violations, James also sought injunctive relief in his complaint and subsequently filed a motion for a temporary restraining order. The plaintiff asked that he be permitted to take his 1994–95 spring semester final exams or, in the alternative, be awarded the grades earned through April 28, 1995, and that he be permitted to attend Shawnee Mission Northwest High School during the 1995–96 school year.

Defendants USD 512, Hess, and Kaplan responded to the motion for a temporary restraining order. The court conducted a hearing on September 1, 1995 and denied

James' motion on September 5, 1995. The court found that James failed to establish a substantial likelihood of prevailing on the merits of his due process claims. *See James v. Unified Sch. Dist. No. 512, Johnson County, Kan.*, 899 F.Supp. 530 (D.Kan.1995).

Defendants Kaplan, Hess, Hotzel, and Hayselden subsequently filed the pending motions for summary judgment.

## II. Legal Standards

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). All disputed facts, and reasonable inferences derived from the evidence presented, must be resolved in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 977 (10th Cir.1995); *F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F.Supp. 1474, 1479 (D.Kan.1995). The existence of factual disputes is not an automatic preclusion to the grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact is one "that might affect the outcome of the suit under the governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

The movant is entitled to judgment as a matter of law should the nonmoving party insufficiently establish an essential element of a claim for which the nonmovant has the burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 should be construed to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Id.* Entitlement to summary judgment must be proven beyond a reasonable doubt. *Norton v. Liddel*, 620 F.2d 1375, 1381 (10th Cir.1980).

"It is well settled law that to establish a claim under § 1983, a plaintiff must allege a

deprivation of a federally protected right under color of state law." *Malek v. Haun,* 26 F.3d 1013, 1015 (10th Cir.1994); *see Hill v. Ibarra,* 954 F.2d 1516, 1520 (10th Cir.1992).

### III. Kaplan & Hayselden

■ Defendants Kaplan and Hayselden raise similar arguments in their separate motions for summary judgment. Both assert a qualified immunity defense. Additionally, both contend that James has failed to state a viable § 1983 claim against them. The court does not reach the qualified immunity issue if the plaintiff's claims against Kaplan and Hayselden are not actionable. *See Kaul v. Stephan,* 83 F.3d 1208, 1213 (10th Cir.1996). Therefore, the court will address first whether James' allegations, accepted as true, state a claim under § 1983.

■ Succinctly stated, respondeat superior is the theory underlying James' claims again Kaplan and Hayselden.[3] The Tenth Circuit Court of Appeals recently summarized the law in this area:

> The plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation. Though state actors who participate in a violation in a supervisory role may incur liability, there is no concept of strict supervisor liability under section 1983. In other words, it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, just as with any individual defendant, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights. A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual

knowledge of the violation and acquiesced in its continuance.

*Jenkins v. Wood,* 81 F.3d 988, 994–95 (10th Cir.1996) (internal quotation marks and citations omitted).

Here, the plaintiff only makes conclusory allegations against Kaplan and Hayselden.[4] James presents no specific factual allegations that either defendant directed the violation or had actual knowledge of the violation. The plaintiff's allegation that both defendants had constructive knowledge does not satisfy the standard. *See Jojola v. Chavez,* 55 F.3d 488, 491 (10th Cir.1995) ("Imputation of constructive knowledge requires a showing that the underlying unconstitutional misconduct was so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known.") (internal quotations marks and citations omitted). The court therefore finds that James has failed to state a viable § 1983 claim against Kaplan and Hayselden. These defendants' motions for summary judgment are granted.

### IV. Hess & Hotzel

Remaining before the court are defendants Hess' and Hotzel's motions for summary judgment. The focus of both motions is qualified immunity; however, before discussing qualified immunity, the court first must examine whether the plaintiff has stated a cognizable claim under § 1983. *See Kaul,* 83 F.3d at 1213.

#### A. Fourteenth Amendment

■ In his complaint, James alleges that his suspension and subsequent expulsion from school violated his substantive and procedural due process rights under the Fourteenth Amendment. In addition to alleging a

---

**3.** In his complaint, the plaintiff alleges that "defendant Hess was acting pursuant to orders and directives from defendant Marjorie Kaplan" and that Kaplan

> failed to properly train, discipline and supervise Hess, improperly retained and trained him, had knowledge or reasonably should have known of actual or potential denial of constitutional rights as has been alleged; had actual or constructive control of defendant Hess, but failed to correct or prevent the wrongful conduct as has been alleged; and by these actions or failure to act or acquiescence established a custom, practice and policy within the subject

school which was deliberately indifferent to plaintiff's constitutional rights alleged to have been violated.

(Doc. 1, Complaint, ¶¶ 9, 32.) With the substitution of Hayselden for Kaplan and Hotzel for Hess, the plaintiff's allegations against Hayselden are identical. (Doc. 1, Complaint, ¶¶ 6, 34.)

**4.** It is an uncontroverted fact that there were three levels of supervision between Hayselden and Hotzel and that Hayselden exercised no direct supervision, control, or direction over Hotzel.

general violation of his substantive liberty interest, the plaintiff contends that he was not given proper notice nor allowed to confront the alleged informant. In his supplemental response, James also defines the violation in terms of the defendants failing to follow USD 512 guidelines.

The facts are uncontroverted that Hotzel had no involvement in the decision to suspend and expel James from school.[5] *See Vinyard v. King,* 728 F.2d 428, 433 (10th Cir.1984) (liability under § 1983 exists if defendant, acting "under color of state law, subjects, or causes to be subjected, any citizen to a constitutional deprivation"). Therefore, the plaintiff has failed to state a § 1983 due process claim against Hotzel.

Hess was involved in the decision to suspend and expel James from school. For the reasons set forth in the court's order of September 6, 1995, however, the court finds no due process violation. *See James,* 899 F.Supp. 530. Summary judgment, therefore, is granted to Hess on James' § 1983 due process claim.

### B. Fifth Amendment

■ James alleges that he was subjected to custodial interrogations in the auto-tech office without being read his *Miranda* rights and with his request for counsel ignored. The plaintiff claims that this conduct violated his Fifth Amendment *Miranda* rights against self-incrimination and to assistance of counsel.

The Fifth Amendment protects an individual from being "compelled. in any Criminal Case to be a witness against himself." U.S. Const. amend. V. It is well settled under *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), that "in order to protect the privilege against self-incrimination, law enforcement officers must administer prophylactic warnings regarding the privilege to any suspect subjected to 'custodial interrogation.'" *United States v. Erekson,* 70 F.3d 1153, 1156 (10th Cir.1995). Nevertheless, "violations of the prophylactic

Miranda procedures do not amount to violations of the Constitution itself." *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir.1994).

In *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976), the Tenth Circuit rejected a § 1983 claim based upon failure to warn the plaintiff of his *Miranda* rights before custodial interrogation. The court of appeals reasoned:

> The Constitution and laws of the United States do not guarantee [the plaintiff] the right to *Miranda* warnings. They only guarantee him the right to be free from self-incrimination. The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence. No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act.

*Id.; see Craig v. St. Martin Parish Sheriff,* 861 F.Supp. 1290, 1298 (W.D.La.1994) ("Under the Fifth Amendment, ... a detainee subject to custodial interrogations has the right to counsel. However, the remedy for a violation of the suspect's *Miranda* rights is the exclusion from evidence of any compelled self-incrimination, not a civil rights action under 42 U.S.C. § 1983.") (citations omitted).

Accepting the facts in the light most favorable to James, the court finds that he has failed to state a § 1983 claim. Accordingly, the court grants Hess' and Hotzel's motions for summary judgment on James' Fifth Amendment claims.

### C. Fourth Amendment

■ James claims that he was seized for Fourth Amendment purposes when Hess and Hotzel questioned him in the auto-tech office. Both defendants maintain they are entitled to qualified immunity,[6] which "is an affirma-

---

5. Hotzel's only involvement was as a witness in legal and administrative proceedings.

6. Hotzel also disputes that James was seized for Fourth Amendment purposes. *See Cason v. Cook,* 810 F.2d 188, 190 & 193 (8th Cir.1987) (student not in custody when questioned in

locked restroom and school office). *Cason* is distinguishable factually: The vice-principal handled the questioning of the student. A liaison police officer, who was instructed to cooperate with school officials, was present but asked no questions. Here, both the associate principal and the police officer questioned James.

tive defense against section 1983 claims.... The defense provides immunity from suit, not merely from liability. Its purpose is to spare defendants the burden of going forward with trial." *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir.1995) (citations omitted)

> When a defendant raises the defense of qualified immunity, plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with facts or allegations sufficient to show the official violated the clearly established law. Defendant bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute. For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains.

*V-1 Oil Co. v. Means,* 94 F.3d 1420, 1422–23 (10th Cir.1996). The law must be clearly established at the time of the defendant's alleged conduct. *Barrett v. Fields,* 924 F.Supp. 1063, 1071 (D.Kan.1996) (citing *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984)).

The defendants argue that the law is clearly established and that law is the standard the Supreme Court enunciated for school searches in *New Jersey v. T.L.O.,* 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985), which the Tenth Circuit applied to school seizures in *Edwards v. Rees,* 883 F.2d 882, 884 (10th Cir.1989). James apparently does not contest the defendants' view of the clearly established law, focusing instead upon what the plaintiff deems to be material factual disputes.

> In *T.L.O.,* the Court held:
> [T]he accommodation of the privacy interest of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the reasonableness under all the circumstances, of the search.

469 U.S. at 341, 105 S.Ct. at 742. The search is reasonable if it was " 'justified at its inception' " and " 'reasonably related in scope to the circumstances which justified the interference in the first place.' " *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

The court is not persuaded that *T.L.O.* or *Edwards* apply to the instant case. Both cases addressed actions taken by school officials without police involvement. *See T.L.O.,* 469 U.S. at 342 n. 7, 105 S.Ct. at 743 n. 7 ("We here consider only searches carried out by school authorities acting alone and on their own authority. This case does not present the question of the appropriate standards for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies, and we express no opinion on that question."); *Edwards,* 883 F.2d at 883.

■ It is not the defendants' burden to demonstrate that the law was clearly established. James has the heavy burden of demonstrating "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant[s'] actions were clearly prohibited." *Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir.1990) (citation omitted). "The plaintiff must make a particularized showing, demonstrating that the contours of the violated right were so established that a reasonable official would understand that what he [wa]s doing violate[d] that right, or that the official did not act in good faith." *Norton v. Village of Corrales,* 103 F.3d 928, 933 (10th Cir.1996) (internal quotations and citations omitted).

James has failed to cite any authority establishing that Hess' and Hotzel's alleged seizure of him violated the Fourth Amendment.

> While students do not "shed their constitutional rights ... at the schoolhouse gate," *Tinker v. Des Moines Ind. Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 ... (1969), the Supreme Court has never held that "the full panoply of constitutional rules applies with the same force and effect in the schoolhouse as it does in the enforcement of criminal law." *T.L.O.,* 469 U.S. at

350, 105 S.Ct. at 747 (Powell, J., concurring).

*Edwards,* 883 F.2d at 884. The court has found no authoritative Supreme Court or Tenth Circuit opinion sufficiently analogous to the instant facts. Nor has the court found that the clearly established weight of authority from other courts supports the plaintiff's position. Hess and Hotzel are entitled to qualified immunity on James' § 1983 Fourth Amendment seizure claim.

Finally, the plaintiff maintains that the search of his vehicle violated the Fourth Amendment because the search was not incident to a valid arrest and was conducted without probable cause, without consent, and without a warrant.

■ Hess declares that he is not liable for the alleged violation because, although present, he was not involved in the search. In his supplemental response, the plaintiff agrees that Hotzel solely conducted the search. Although James alleges that Hess allowed the search, the plaintiff offers no facts to support his allegation. The court grants summary judgment to Hess on James' § 1983 Fourth Amendment search claim.

■ With regard to Hotzel, the plaintiff maintains that the law is clearly established that if a police officer is the proximate cause of the search, the officer must have probable cause to conduct a warrantless search at school. *See Picha v. Wielgos,* 410 F.Supp. 1214, 1219 & 1221 (N.D.Ill.1976); *Smyth v. Lubbers,* 398 F.Supp. 777 (W.D.Mich.1975); *Piazzola v. Watkins,* 316 F.Supp. 624 (M.D.Ala.1970), *aff'd,* 442 F.2d 284 (5th Cir. 1971). In *Picha,* the school principal, based upon a telephone call, suspected the thirteen-year-old plaintiff of possessing illegal drugs. The superintendent recommended that the principal call the police. The police arrived and upon their instigation, the school nurse and school psychologist separately searched the plaintiff and located no drugs. In requiring probable cause for a police-caused search, the *Picha* reasoned that "the substantial state interest in the provision of education and the maintenance of school discipline cannot be here said to temper the application of the Constitution to a search caused by police for evidence of crime." 410 F.Supp. at 1221. *Smyth* and *Piazzola* involved searches of col-

lege dormitory rooms and are distinguishable from the instant facts.

Hotzel first attacks James' analysis by suggesting that the *T.L.O.* standard is the clearly established law. For the reasons previously stated, the court finds that the school official standard in T.L.O. is not the clearly established law for police officers conducting a search at school.

Alternatively, Hotzel suggests the law is not clearly established because the cases James cites are not within the Tenth Circuit and because other courts have ruled differently. *See Martens v. District No. 220,* 620 F.Supp. 29 (N.D.Ill.1985). In *Martens,* the high school dean received an anonymous telephone call insinuating that the plaintiff sold drugs at school and kept drug paraphernalia in his possession. The dean called the plaintiff to his office. The plaintiff refused to consent to a search until his parents were contacted. During the time the dean and the plaintiff attempted to reach the plaintiffs' parents, a deputy sheriff stopped by on another matter. The deputy suggested it would be in the plaintiff's best interests to cooperate and requested that the plaintiff empty his pockets. The plaintiff complied. The Martens court acknowledged that the deputy's involvement distinguished the case from *T.L.O..* Nonetheless, the court reasoned that "[t]he interest that prompted the *T.L.O.* Court to waive the warrant requirements and to adopt a reasonableness standard—preserving swift and informal disciplinary procedures—would not be served by imposing warrant and probable cause requirements here in light of [the deputy's] limited role." 620 F.Supp. at 32. The *Martens* court noted that the deputy had nothing to do with developing the facts to detain the plaintiff, that the deputy did not direct the school officials to detain and search the plaintiff, and that there was no evidence a criminal investigation was envisioned.

Again, James has failed to satisfy his burden of showing that the law is clearly established. The parties have not cited, and the court has not found, any authoritative Supreme Court or Tenth Circuit opinion sufficiently analogous to the instant facts. Additionally, there appears to be no consistent

weight of authority from other courts. The court finds that Hotzel is entitled to qualified immunity on James' § 1983 Fourth Amendment search claim.

IT IS, THEREFORE, BY THE COURT ORDERED that motions for summary judgment by defendants Kaplan and Hess (Doc. 41) and by defendants Hotzel and Hayselden (Doc. 45) are granted.

The only claims remaining are against USD No. 512 and the City of Shawnee, Kansas.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**