(225 P.3d 736)
No. 101,288

STATE OF KANSAS, *Appellee*, v. JORDAN KELLY BURDETTE, *Appellant*.

Opinion filed February 19, 2010.

*Mitchell B. Christians*, of Salina, for appellant.

*Jeffery Ebel*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., ELLIOTT and GREENE, JJ.

HILL, J.: This is an appeal by a student convicted of having marijuana in his pockets while he was at school. Two sheriff's deputies were in the room when an acting principal asked Jordan Kelly Burdette to empty his pockets. In Burdette's view, this turned a search by school authorities into a law enforcement search. Since law enforcement searches need probable cause and there was no probable cause here, Burdette claims the district court should have suppressed the marijuana produced from his pockets. Because, other than their presence, there was no real involvement of law enforcement officers in asking Burdette to empty his pockets, we hold this search was not a law enforcement search needing probable cause. The record reveals this search was justified from its inception because of Burdette's abnormal behavior; it was reasonable in scope and not excessively intrusive. We affirm Burdett's convictions of possession of marijuana and possession of drug paraphernalia.

*A teacher notices Burdette and tells the school counselor.*

Bill Gies, a freshman English teacher at Southeast of Saline School in U.S.D. No. 306, noticed one of his students, Burdette, acting "really, really different" while Burdette was standing at his locker talking with some of his friends. Gies observed Burdette for about 3 to 5 minutes that morning before classes started. Burdette's appearance made Gies think Burdette was either ill or "under the influence of something." In Gies' experience, Burdette was normally "open-eyed, open to most of the kids"; but on this day, he appeared quieter than normal and Burdette's eyes were "basically shut." Concerned about his student's welfare, Gies went to the school office to report. He told the school counselor about Burdette, who then had the secretary bring Burdette to the office. The counselor, in turn, told the acting principal, who came to the office to meet with Burdette.

Two law enforcement officers overheard Gies' conversation with the counselor. Deputy Shea, with the Saline County Sheriff's Office, was the school resource officer posted at Southeast of Saline

School. Deputy Trembley, whose patrol area included the high school, was at the school to confer with Shea.

The search was simple and direct. Wayne Sager was acting principal on that day. When Sager entered the office, Burdette and Deputies Shea and Trembley were present. Deputy Shea asked Sager if he wanted Burdette to empty his pockets. Sager said, "Yes, that would be the normal procedure that we'd go through." Sager testified that he did not take the officer's question as an order. Sager then asked Burdette to empty his pockets. Burdette asked Sager if he had to, and Sager told him yes. Burdette emptied his pockets and put the items on the table. The items included money in a clip and two little baggies. Deputy Trembley picked up one of the baggies, smelled it, and asked Burdette what was in the baggie. Burdette said it was "weed." The officers also asked Burdette if there were any narcotics in his locker, and he said no.

The State charged Burdette with possession of marijuana, in violation of K.S.A. 65-4162(a)(3), and possession of drug paraphernalia, in violation of K.S.A. 2007 Supp. 65-4152(a)(2). Burdette filed a motion to suppress both the marijuana found in the search and his statement that the baggie contained "weed."

The district court did not suppress the marijuana but did suppress Burdette's statement that the baggie contained weed. The court found the school officials, not the deputies, were responsible for the search of Burdette and that Sager acted within the scope of his position as acting principal. After a bench trial on stipulated facts, the court found Burdette guilty of possession of marijuana and possession of drug paraphernalia. First, we will repeat our two-step standard of review applicable in this type of appeal, followed by a brief review of the law of search and seizure. Then, we will apply Kansas Supreme Court precedent to the facts of this case to reach our conclusion.

*We offer some fundamental points of law.*

An appellate court reviews a district court's decision on a motion to suppress in two steps. Without reweighing the evidence, we decide if substantial competent evidence supports the district court's findings. Next, using an unlimited standard, we look to see

if the district court's ultimate legal conclusion is sound. See *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007).

Generally, warrantless searches and seizures are per se unreasonable under the Fourth Amendment to the United States Constitution. *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). But, there are exceptions. In *New Jersey v. T.L.O.*, 469 U.S. 325, 339-40, 83 L. Ed. 2d 720, 105 S. Ct. 733 (1985), the United States Supreme Court allowed for a departure from the warrant requirement. In *T.L.O.*, the Court found the warrant requirement "unsuited to the school environment." 469 U.S. at 340. According to the Supreme Court of the United States, requiring school officials to obtain a warrant before searching a student would "unduly interfere with the maintenance of the swift and informal disciplinary procedures needed in the schools." 469 U.S. at 340. The Court also found that searches conducted by school officials need not be based on probable cause. Rather, the legality of a search of a student by school officials depends on the reasonableness of the search. 469 U.S. at 340-41.

In *T.L.O.*, the Court created a test for determining the reasonableness of a school search. First, a court must consider whether the search was justified at its inception. A search of a student by a school official is justified when there are "reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." 469 U.S. at 342. Second, the court must consider whether the scope of the actual search was reasonably related to the circumstances that prompted the search. 469 U.S. at 341-42.

*We cite a Kansas case.*

This same test for determining the reasonableness of a search conducted by school officials was adopted in Kansas in the ruling found in *In re L.A.*, 270 Kan. 879, 21 P.3d 952 (2001). Our Supreme Court made it very clear that school searches differ from law enforcement searches:

"The accommodation of the privacy interests of school children with the substantial interest of teachers and administrators in maintaining order in the schools does not require strict adherence to the requirement that searches be based on

probable cause to believe that the subject of the search has violated or is violating the law."

"The legality of a search of a student by a teacher or other school official depends on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place."

"Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school."

"A search of a student will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *In re L.A.*, 270 Kan. 879, Syl. ¶¶ 2-5.

But Burdette contends the rules announced in *In re L.A.* do not apply here. Burdette argues the presence and actions of the two deputies, Shea and Trembley, distinguish this case from *In re L.A.* Burdette asserts that we should view this search as a traditional law enforcement search and not a search by school officials. Implicitly then, if this was a law enforcement search rather than a school search, the officers or even the school officials needed probable cause before making the search. Therefore, in Burdette's view, since there was no evidence of probable cause to believe a crime had been committed or was about to be committed, the court should have sustained the motion to suppress.

*We look at cases from other jurisdictions.*

We have found no Kansas case that has ruled on this issue when law enforcement officers have been present during a school search, but courts in other jurisdictions have. Those courts that have ruled upon the matter focused their inquiry on the amount of involvement the law enforcement officers had in the search.

First, we look at a case from Illinois. In *Martens v. District No. 220, Bd. of Educ.*, 620 F. Supp. 29 (N.D. Ill. 1985), the court considered whether the test set forth in *T.L.O.* applied to the search of a student when law enforcement participated in the search. In *Martens*, the dean of students received an anonymous

phone call that Martens was selling drugs. The dean brought Martens into her office and questioned him regarding the tip. Officer Hentig, a sheriff's deputy who was at the school on another matter, came into the dean's office and spoke to Martens. Deputy Hentig told Martens that it would be best to cooperate with school officials and asked Martens to empty his pockets. Martens complied and removed a pipe containing marijuana from his pocket. Deputy Hentig did not supply any evidence implicating Martens, nor did he direct school officials to detain Martens for questioning.

Applying the reasonable grounds standard set forth in *T.L.O.*, the court in *Martens* pointed to Hentig's "relatively limited role" in the investigation and search. 620 F. Supp. at 32. Hentig did not direct school officials to detain and search Martens or take part in the investigation leading up to Martens' detention. Although the record indicated it was Officer Hentig who told Martens to empty his pockets, there was no indication a criminal investigation was contemplated or that the search was a cooperative effort with law enforcement officers. The court concluded there was "no basis for thinking that school official action was a subterfuge to avoid warrant and probable cause requirements." 620 F. Supp. at 32.

Courts in other states have taken a similar approach. The courts have extended the *T.L.O.* reasonableness standard to school searches involving police officers where (1) school officials initiate the search and police involvement is minimal or (2) where school officials act in conjunction with, but not at the behest of, law enforcement. See *Cason v. Cook*, 810 F.2d 188, 191-92 (8th Cir. 1987) (applying *T.L.O.* when school police officer conducted a pat-down search of student after principal found stolen items in student's purse); *F.S.E. v. State*, 993 P.2d 771, 772-73 (Okla. Crim. 1999) (applying *T.L.O.* when school principal ordered student to open the trunk of his car and police officer subsequently searched student's trunk); *In re D.D.*, 146 N.C. App. 309, 318-24, 554 S.E.2d 346, *rev. denied* 354 N.C. 572 (2001) (applying *T.L.O.* where officers did not initiate investigation and were asked by the principal to assist in investigation); *State v. Angelina D.B.*, 211 Wis. 2d 140, 151-60, 564 N.W.2d 682 (1997) (applying test enunciated in *T.L.O.* when city police officer and school liaison officer searched student

for weapons after principal heard reports of a student carrying a weapon).

On the other hand, we note that school officials' power to search students cannot be used to cloak what is normally a police function performed by or at the behest of law enforcement officers. Where school officials search students at the request of outside law enforcement officers in a criminal investigation, courts require the normal probable cause requirement to justify the search of a student. *State v. Tywayne H.*, 123 N.M. 42, 45-46, 933 P.2d 251(Ct. App.), *cert. denied* 123 N.M. 83 (1997) (applying probable cause when frisks of students at school dance were conducted solely by law enforcement officers); *In Interest of Thomas B.D.*, 326 S.C. 614, 618-21, 486 S.E.2d 498 (Ct. App. 1997) (applying probable cause when law enforcement officers, not school officials, searched student on school grounds.) In such cases, the purpose of the search conducted by law enforcement was to obtain evidence of a crime, not to "maintain discipline, order, or student safety." *In re D.D.*, 146 N.C. App. at 318.

## We apply the T.L.O./L.A. rule here.

A fair reading of these cases persuades us that the search in this case was reasonable and legal. The search of Burdette appears to fall into the category of searches where school officials are acting in conjunction with, not at the behest of, law enforcement officers. Deputies Shea and Trembley had no part in this search of Burdette other than being present. Shea and Trembley did not initiate this investigation. Gies, a teacher, first noticed Burdette acting unusual. Gies reported the behavior to the school counselor, not to the deputies. It was only after overhearing this conversation when deputies became involved. Further, the deputies were present at the search at the request of school officials.

Certainly, the police involvement in this case was much less than what was reported in *Martens*. In *Martens*, the officer told Martens to cooperate and ordered the search. Also, the officer spoke to Martens prior to the search. Additionally, the officer was at the school on another matter. In this case, Shea was simply at her post as the school resource officer. In contrast to the officer in *Martens*,

Shea did not encourage Burdette to cooperate or ever speak to Burdette before acting principal Sager entered the office. Also, there was no indication in the record that Shea made Burdette open his pockets. Although Shea did ask Sager if he wanted Burdette to empty his pockets, it was Sager who actually ordered Burdette to do so.

In the cases where other courts have required probable cause to justify a search of a student, we note only law enforcement officers conducted those searches as part of a criminal investigation. Obviously, here, the search was conducted under different circumstances. Thus, we conclude this was not a law enforcement search and probable cause was not needed to justify the search. The district court was correct in applying the standards set forth in *In re L.A.* and denying Burdette's motion to suppress.

Applying the test set forth in *T.L.O.* and *In re L.A.*, the search of Burdette was reasonable and legal. First, the search of Burdette was justified at its inception. School officials had "reasonable grounds for suspecting the search [would] turn up evidence that the student has violated or is violating either the law or rules of the school." *In re L.A.*, 270 Kan. at 885. Here, Gies noticed Burdette acting differently. Burdette's eyes also appeared to be shut. Gies felt that Burdette was either ill or under the influence of some substance. School officials must be concerned about the condition of their students. Based on this observation, there were reasonable grounds to suspect that Burdette had been using drugs. Certainly, the district court's findings about this are supported by substantial competent evidence.

Second, the search of Burdette was reasonably related to the circumstances that prompted the search. School officials felt that Burdette was "on something." The scope of the search was limited to Burdette emptying his pockets to determine if he was possessing drugs. The search is not excessively intrusive. The search did not go beyond determining whether Burdette was in possession of drugs. The district court's legal conclusion was sound. Therefore, the district court properly denied the motion to suppress.

Affirmed.